193 P.3d 693 (2008)
STATE of Washington, Respondent,
v.
Graeme A. GEORGE, Petitioner.
No. 59624-1-I.
Court of Appeals of Washington, Division 1.
October 13, 2008.
*695 Joseph L. Broadbent, Attorney at Law, Mount Vernon, WA, for Petitioner.
Ann Lindsay Stodola, Whatcom County Prosecutors Office, Bellingham, WA, for Respondent.
BECKER, J.
¶ 1 Appellant Graeme George was convicted of possession of marijuana and possession of drug paraphernalia. The superior court affirmed. We granted discretionary review, and now reverse and remand for dismissal with prejudice. The citation for possession of drug paraphernalia contained insufficient notice of the elements of the crime; the trial judge improperly refused to give an unwitting possession instruction unless George testified; and the evidence was insufficient to show that George had dominion and control over the pipe and its contents.

FACTS
¶ 2 One evening in March 2005, Washington State Patrol Trooper Brian Thompson stopped a two-door Ford Explorer in Bellingham for driving 43 miles per hour in a 25 mile-per-hour zone. When he walked up to the driver's side of the vehicle and the driver rolled the window down, Trooper Thompson immediately smelled the strong odor of burnt marijuana wafting from the vehicle. There were three men in the vehicle: the driver; the vehicle's registered owner in the front passenger seat; and George. George was in the back seat behind the driver. Trooper Thompson asked whether there was any marijuana in the vehicle. All three denied that there was.
¶ 3 Trooper Thompson placed the occupants under arrest "for the odor of marijuana in the vehicle." He had each of the men step out of the vehicle one at a time, patting them down as he did so. He placed the driver and the registered owner in the back of his patrol car. He handcuffed George and had him stand in front of the vehicle while he searched it.
¶ 4 Trooper Thompson found an eight-inch long, six-and-a-half-inch wide blue glass water pipe among empty beer cans and bottles on the floorboard behind the driver's seat, next to where George had been sitting. There was burned marijuana in the pipe. Trooper Thompson asked the occupants if "somebody wanted to own up" to the pipe. All three denied owning it. Trooper Thompson then took the pipe for entry into evidence, cited all three occupants for possession of marijuana and possession of drug paraphernalia, and booked them into jail. George's citation read that he was charged with:

*696 RCW 69.50.412(i)[1]
Possession of drug paraphernalia RCW 69.50.401
Possession of marijuana less than 40g.
¶ 5 George was tried in the Whatcom County District Court for both misdemeanor possession of marijuana and misdemeanor possession of drug paraphernalia. He wanted to argue that if found to have possession, it was unwitting. To this end, he sought to have the jury instructed consistent with the pattern unwitting possession instruction, WPIC 52.01. The court refused to give the instruction.
¶ 6 George was convicted on both counts. The superior court affirmed. We granted discretionary review of all three issues raised by George in his appeal to the superior court.

UNWITTING POSSESSION INSTRUCTION
¶ 7 George contends that he was entitled to have the jury instructed on the defense of unwitting possession with respect to the possession of marijuana charge.
¶ 8 The trial court accepted the State's argument that there was insufficient evidence to warrant the instruction unless George testified:
THE COURT: Well counsel the instruction says the possession of a controlled substance is unwitting if the person.... didn't know what the substance was or did not know the nature of the substance, and we are not going to allow his testimony on this instruction through the trooper. I mean if he is going to get up and testify to that then I will give the instruction.
[DEFENSE COUNSEL]:.... I don't think it matters where the evidence comes from
THE COURT: How does the trooper know what your client knows?....
....
[PROSECUTOR]:.... I don't see how defense can try to shoehorn an affirmative defense the State's witness [sic]. I think it's clearly inappropriate.
THE COURT [to defense counsel]: And I am not going to give the instruction unless your client testifies.
At the conclusion of the State's case in chief, George again asked the court to give the unwitting possession instruction. The trial court again refused to do so unless George testified.
¶ 9 George had previously been convicted of making a false statement to a public official. The prosecutor indicated that he planned to introduce the prior conviction to impeach George's credibility should George testify.
¶ 10 George did not testify in his own defense and he did not call any other witnesses. The jury was instructed that George was not required to testify, but was not instructed on his proposed defense of unwitting possession. In closing, the prosecutor argued that it was immaterial whether George knew there was marijuana in the pipe:
[PROSECUTOR]:.... I just want to talk to you about ... things that defense is arguing that don't matter.... you won't find in the jury instructions ... anything about knowledge.... So I would ask you to disregard that argument because it is not in the jury instructions; it is not in evidence.
¶ 11 The law regarding the defense of unwitting possession is well-established. The State has the burden of proving the elements of unlawful possession of a controlled substance as defined in the statute the nature of the substance and the fact of possession. Defendants then can prove the affirmative defense of unwitting possession. This affirmative defense ameliorates the harshness of a strict liability crime. State v. Bradshaw, 152 Wash.2d 528, 538, 98 P.3d 1190 (2004). Unwitting possession must be proved by a preponderance of the evidence. State v. Balzer, 91 Wash.App. 44, 67, 954 P.2d 931 (1998).
*697 ¶ 12 A defendant in a criminal case is "entitled to have the trial court instruct upon its theory of the case if there is evidence to support the theory." State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986). A trial court errs by not instructing the jury on the defense of unwitting possession when evidence supporting the defense is adduced at trial. State v. May, 100 Wash. App. 478, 482-83, 997 P.2d 956 (2000). "In evaluating whether the evidence is sufficient to support a jury instruction on an affirmative defense, the court must interpret it most strongly in favor of the defendant and must not weigh the proof or judge the witnesses' credibility, which are exclusive functions of the jury." May, 100 Wash.App. at 482, 997 P.2d 956. The affirmative defense of unwitting possession "must be considered in light of all the evidence presented at trial, without regard to which party presented it." State v. Olinger, 130 Wash.App. 22, 26, 121 P.3d 724 (2005) (emphasis added).
¶ 13 Here, the testimony of the only witnessTrooper Thompsonprovided a wealth of evidence that justified the jury being instructed on the defense of unwitting possession. Trooper Thompson testified that all three vehicle occupants denied knowing anything about any marijuana being present. He testified that George denied knowledge of any marijuana in the vehicle and denied ownership of the pipe. He testified that George was not driving the vehicle and did not own the vehicle; the vehicle owner was present in the front passenger seat. He testified that there was no fingerprint evidence linking George to the pipe. He testified that it was at least theoretically possible that someone in the front seat could have placed the pipe in the back seat after the vehicle was stopped. He testified that he did not know when the pipe had last been used, who placed it on the floorboard, or when it was placed there.
¶ 14 In view of Trooper Thompson's testimony, the trial court erred by concluding that George was required to testify in order to have the jury instructed on his requested defense. Trooper Thompson's testimony provided a sufficient evidentiary basis to warrant the requested instruction. The error was not harmless. This error alone warrants reversal of George's conviction for misdemeanor possession of marijuana.

ESSENTIAL ELEMENTS RULE
¶ 15 George contends that his conviction for possession of drug paraphernalia must also be reversed because the citation by which he was charged did not state the elements of the offense of which he was charged.
¶ 16 A person may not be convicted of a crime with which he or she was not charged. Auburn v. Brooke, 119 Wash.2d 623, 627, 836 P.2d 212 (1992). In order to meet this requirement, all of the essential elements of the charged offense, statutory or otherwise, must be included in a charging document in order to afford to the accused the constitutional requirement of notice. State v. Kjorsvik, 117 Wash.2d 93, 97, 812 P.2d 86 (1991). An essential element is one whose specification is necessary to establish the very illegality of the behavior charged. State v. Ward, 148 Wash.2d 803, 811, 64 P.3d 640 (2003).
¶ 17 In Brooke, two defendants were charged by citations issued by police officersone for "9.40.010(A)(2) Disorderly Conduct," and one for "11.56.420 Hit/Run; Attended." Brooke, 119 Wash.2d at 625-26, 836 P.2d 212. For the first time on appeal, both defendants challenged the constitutional sufficiency of their citations as charging documents. The Supreme Court accepted review of both cases, describing the issue presented as: "Does a misdemeanor or gross misdemeanor citation used as the final charging document in a criminal prosecution satisfy the `essential elements' rule if it states only a numerical code section and the name of a criminal offense?" Brooke, 119 Wash.2d at 627, 836 P.2d 212.
¶ 18 The Supreme Court answered the question in the negative, holding that the essential elements rule applies to all charging documents, including citations used as final charging documents. The recitation of no more than a numerical code section and the title of an offense does not satisfy that rule "unless such abbreviated form contains all essential elements of the crime(s) charged." *698 Brooke, 119 Wash.2d at 627, 836 P.2d 212. Criminal defendants should not "have the burden of locating the relevant code ... and determining the elements of the offense from the proper code section." Brooke, 119 Wash.2d at 635, 836 P.2d 212. It is "an unfair burden to place on an accused," especially in misdemeanor and gross misdemeanor cases where defendants are often unrepresented by counsel. Brooke, 119 Wash.2d at 635, 836 P.2d 212. Based on this conclusion, and the absence of necessary elements from the misdemeanor citations issued to the defendants, the court reversed both defendants' convictions, and remanded their causes for dismissal of the charges against them without prejudice. Brooke, 119 Wash.2d at 639-40, 836 P.2d 212.
¶ 19 The State does not directly address Brooke. The State relies on the rule that citations issued by officers need not be as detailed as complaints issued by prosecutors. State v. Leach, 113 Wash.2d 679, 698, 782 P.2d 552 (1989). What the State's argument ignores, however, is that the court in Brooke specifically examined and rejected the contention that Leach stands for the proposition that citations need not state all of the essential elements of a charged misdemeanor offense. See Brooke, 119 Wash.2d at 638-39, 836 P.2d 212. In a post conviction challenge, charging documents are liberally construed. Kjorsvik, 117 Wash.2d at 102, 812 P.2d 86. But even under the most liberal interpretation of the standard, "all essential elements of an alleged crime must be included" in the charging document in some form. Kjorsvik, 117 Wash.2d at 101 and 105, 812 P.2d 86. Kjorsvik does not allow the State to charge by citation to a code section and the common name of an offense without stating all of the elements necessary to sustain a conviction. See Brooke, 119 Wash.2d at 636, 836 P.2d 212.
¶ 20 The State's reliance on State v. Grant, 104 Wash App. 715, 17 P.3d 674 (2001), is also unavailing. In that case, we recognized that the shorthand phrase "DWI" sufficiently charged the crime of "driving while intoxicated," or, more properly, "driving under the influence of or affected by intoxicating liquor.... RCW 46.61.502(1)(b)." Grant, 104 Wash.App. at 719-20, 17 P.3d 674. This shorthand was sufficient because it contained the "necessary facts of the offense." Grant, 104 Wash.App. at 717, 17 P.3d 674.
¶ 21 Here, the citation at issue alleged that George was guilty of "possession of drug paraphernalia." But no Washington statute criminalizes "possession of drug paraphernalia." See, e.g., State v. Neeley, 113 Wash. App. 100, 107, 52 P.3d 539 (2002) ("bare possession of drug paraphernalia is not a crime"); State v. McKenna, 91 Wash.App. 554, 563, 958 P.2d 1017 (1998) ("mere possession of drug paraphernalia is not a crime"); State v. Lowrimore, 67 Wash.App. 949, 959, 841 P.2d 779 (1992) ("RCW 69.50.412 does not, ipso facto, make possession of drug paraphernalia a crime").
¶ 22 For possession of drug paraphernalia to be a crime, a defendant must either "use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance," RCW 69.50.412(1), or "deliver, possess with intent to deliver, or manufacture with intent to deliver drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." RCW 69.50.412(2).
¶ 23 Even under the most liberal construction of the citation issued by Trooper Thompson, none of the possible circumstances under which George's possession of the pipe could have been found to be criminal were alleged in the citation. This error alone requires reversal of George's conviction for possession of drug paraphernalia.

SUFFICIENCY OF THE EVIDENCE
¶ 24 If our reversal of the two convictions were based only on the instructional error and the charging defect, the State would be permitted to cure the charging defect and try *699 George again on both counts. But we agree with George that both convictions must also be reversed for insufficiency of the evidence. As a result, both convictions must be dismissed with prejudice.
¶ 25 Sufficient evidence supports a jury's determination of guilt if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). All reasonable inferences are drawn in favor of the verdict and interpreted most strongly against the defendant. State v. Gentry, 125 Wash.2d 570, 597, 888 P.2d 1105 (1995).
¶ 26 Possession of a controlled substance is a strict liability crime. See Bradshaw, 152 Wash.2d at 538, 98 P.3d 1190. Possession of drug residue in a pipe can appropriately be charged as possession of a controlled substance because there is no minimum amount of drug which must be possessed in order to sustain a conviction. State v. Williams, 62 Wash.App. 748, 751, 815 P.2d 825 (1991). To prove possession of drug paraphernalia, the State had to prove not only that George possessed the pipe but also that he used it in a drug-related activity. RCW 69.50.412(1).
¶ 27 Possession may be either actual or constructive. The State argued in closing that George had both. But actual possession requires physical custody. State v. Callahan, 77 Wash.2d 27, 29, 459 P.2d 400 (1969). Because George did not have physical custody of the pipe, the question is whether the State proved that he had constructive possession of the pipe and its contents.
¶ 28 "Constructive possession is proved when the person charged with possession has dominion and control over either the drugs or the premises upon which the drugs were found." State v. Mathews, 4 Wash.App. 653, 656, 484 P.2d 942 (1971) (citing Callahan). An automobile may be considered a "premises." State v. Potts, 1 Wash.App. 614, 617, 464 P.2d 742 (1969). Here, there was insufficient evidence to support a finding that George exercised dominion and control over the vehicle. He was a mere backseat passenger, not the driver or the owner.
¶ 29 The State argued George had constructive possession of the pipe and its contents. "It's at his feet, he's the only one in the back seat and it is sitting right there on the floorboard."
¶ 30 Exclusive control by the defendant is not required to establish possession; more than one defendant may be in possession of the same prohibited item. State v. Turner, 103 Wash.App. 515, 522, 13 P.3d 234 (2000). However, a defendant's mere proximity to drugs is insufficient to prove constructive possession. This is so even where there is evidence that the defendant handled the drugs, because "possession entails actual control, not a passing control which is only a momentary handling." Callahan, 77 Wash.2d at 29, 459 P.2d 400. As established by Callahan, the rule is that "where the evidence is insufficient to establish dominion and control of the premises, mere proximity to the drugs and evidence of momentary handling is not enough to support a finding of constructive possession." State v. Spruell, 57 Wash.App. 383, 388, 788 P.2d 21 (1990). See also State v. Cote, 123 Wash.App. 546, 548-50, 96 P.3d 410 (2004).
¶ 31 Constructive possession cases are fact-sensitive. For guidance, we look not only to the rule as established by Callahan, but also to the results reached in decisions on comparable facts. In Spruell, police entered a room and found appellant Hill and another individual near a table on which there was cocaine residue, a scale, vials and a razor blade. The defendant's conviction for possession of the cocaine was reversed for insufficient evidence:
There is no evidence in this case involving Hill other than the testimony of his presence in the kitchen when the officers entered and the testimony of the conditions there described by Detective Greenbaum and Detective Sergeant McClure. There is no evidence relating to why Hill was in the house, how long he had been there, or whether he had ever been there on days previous to his arrest. There is no *700 evidence of any activity by Hill in the house. So far as the record shows, he had no connection with the house or the cocaine, other than being present and having a fingerprint on a dish which appeared to have contained cocaine immediately prior to the forced entry of the police. Neither of the police officers testified to anything that was inconsistent with Hill being a mere visitor in the house. There is no basis for finding that Hill had dominion and control over the drugs. Our case law makes it clear that presence and proximity to the drugs is not enough. There must be some evidence from which a trier of fact can infer dominion and control over the drugs themselves. That evidence being absent, Hill's conviction must be reversed and dismissed on double jeopardy grounds. Spruell, 57 Wash.App. at 388-89, 788 P.2d 21. In Cote, the evidence was held insufficient to prove constructive possession where the defendant was a passenger in a truck containing components of a methamphetamine lab, and his fingerprints were found on Mason jars containing chemicals in the back of the truck. Cote, 123 Wash.App. at 550, 96 P.3d 410.
¶ 32 The State relies on Mathews, where evidence of proximity coupled with "other circumstances linking him to the heroin" was held sufficient to justify a finding that a back seat passenger had constructive possession of drugs found near his feet. Mathews, 4 Wash.App. at 658, 484 P.2d 942. In Mathews, the defendant and three other individuals were in a car stopped by the police. A small package of heroin was found underneath the carpet near the right back seat where the defendant had been sitting since the foursome left Portland. While recognizing that the defendant's proximity to the heroin was not enough to prove constructive possession, the court identified other evidence that established the necessary link. The defendant was a known heroin user with a three-bag-a-day habit. He had purchased and used heroin before starting out for Longview. Paraphernalia used by heroin addicts was found not only in his coat but also underneath the right back seat where he was sitting. The occupants of the front seat, also heroin addicts, testified that the heroin in the back seat was not theirs and they did not know it was there. The Court noted that the jury could have found that experienced heroin users, such as the front seat occupants, would not hide their heroin within ready access of a known heroin user. The other back seat passenger was not a heroin user.
¶ 33 Sufficient evidence in addition to proximity was also found in State v. Ibarra-Raya, 145 Wash.App. 516, 187 P.3d 301, 306 (2008) where the defendant, who was observed standing near a freshly-dropped bindle of cocaine, said "If you saw me drop it, then I'll admit it's mine." This admission was sufficient to take the issue of constructive possession to the jury.
¶ 34 Here there was no evidence about George's past use or ownership of marijuana or paraphernalia. No drugs or paraphernalia were found on his person. There was no evidence such as dilated pupils, odor on his person, matches, or a lighter to suggest that George had been smoking marijuana with or without the pipe. There was no testimony tending to rule out the other occupants of the vehicle as having possession of the pipe. There was no testimony establishing when George got into the vehicle or how long he had been riding in it. There was no fingerprint evidence linking George to the pipe. And George made no statements or admissions probative of guilt.
¶ 35 The trooper could not remember whether he first spotted the pipe before or after the occupants stepped out of the car. For safety purposes, he did an initial scan inside the car with his flashlight to see what the occupants had in their hands and whether there were guns, but he did not recall seeing the pipe at this time. "I'll just say the first time I seen it was after they stepped out but at least while they were stepping out." The trooper acknowledged that he was not sure how long the pipe had been on the floorboard or how recently it was used. "Based on the strong odor of it, that it was fairly recent it could have been there days but it had been used before days had gone by.... As strong as it was to me, I would have been really surprised if it would have been more than three hours." Thus, the *701 trooper's testimony does not support an inference that George had been using the pipe and then tried to hide it by putting it at his feet.
¶ 36 The State contends it was sufficient that the pipe was found on the floorboard behind the driver's seat, and that while sitting behind the driver George could have easily reduced the pipe to his actual possession. This is not enough to distinguish the facts from Callahan and Spruell, where the drugs were likewise found close enough to the defendants that they could easily have been reduced to actual possession. The State cites no cases holding that proximity plus knowledge of a drug's presence establishes dominion and control over the drug. We have held that knowledge of the presence of marijuana is insufficient to prove dominion and control. State v. Davis, 16 Wash.App. 657, 659, 558 P.2d 263 (1977).
¶ 37 On the spectrum of cases with Callahan and Spruell at one end and Mathews at the other, these facts are closer to Callahan and Spruell. The State's evidence boils down to mere proximity. While there is evidence that a crime was committed, the State did not succeed in clearly associating the crime with George. Cf. State v. Grande, ___ Wash.2d ___, 187 P.3d 248 (2008). We hold the evidence insufficient to sustain a finding that George either used the pipe to smoke marijuana or that he constructively possessed the pipe and its contents.
¶ 38 The convictions are reversed and remanded for dismissal with prejudice.
I CONCUR: JAU, J.
DWYER, A.C.J. (concurring and dissenting).
¶ 39 I concur in both the majority's reasoning and its holdings with respect to the question of the sufficiency of the charging document and as to whether the trial court erred by refusing to instruct the jury on the defense of unwitting possession. I would reverse the judgment and remand the cause for retrial. However, I part company with the majority on the question of whether any jury could reasonably have concluded that George had constructive possession of the marijuana pipe and its contents. The majority's holding on this issue is contrary to both the law and common sense, and from it I dissent.
¶ 40 Sufficient evidence supports a jury's determination of guilt if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Zunker, 112 Wash.App. 130, 135, 48 P.3d 344 (2002) (citing State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980)). All reasonable inferences must be drawn in favor of the verdict and interpreted most strongly against the defendant. Zunker, 112 Wash.App. at 135, 48 P.3d 344 (citing State v. Gentry, 125 Wash.2d 570, 597, 888 P.2d 1105 (1995)). These are long-standing principles.
¶ 41 Several different standards of review are pertinent to this appeal. With regard to George's claim of error on the instructional issue, he gets the benefit of the evidence and the inferences therefrom. Indeed, all factual inferences with respect to whether a requested jury instruction is warranted are drawn in favor of the defendant. To the contrary, however, all factual inferences with respect to whether the evidence presented at trial is sufficient to support a jury's verdict of guilt, under the instructions that were actually given, are drawn against the defendant. Thus, based on a given set of facts, reversal may be warranted due to the trial court's failure to properly instruct the jury, yet not be warranted when premised upon an assertion by the defendant that insufficient evidence was adduced to support a conviction, under the instructions that the trial court actually gave.
¶ 42 Here, it is true that insufficient evidence exists to support a finding that George exercised dominion and control over the pipe and its contents by virtue of exercising dominion and control over the premises in which they were locatedthe vehicle. George was not the registered owner of the vehicle. That person was present in the front passenger seat. Nor was George the driver of the vehicle. Accordingly, in order for the State to have adduced sufficient evidence at trial to support George's convictions, it was required to demonstrate that George, from his position in the rear passenger *702 seat, exercised dominion and control over the pipe itself, and thus the burned marijuana contained therein.
¶ 43 The majority holds that no reasonable jury could have concluded that the State made this showing. To reach this holding, the majority misapplies the applicable standard of review. Moreover, given where the pipe was found and the circumstances under which Trooper Thompson found it, the holding strains credulity. The holding stems from the mistaken notion that appellate cases reviewing findings of constructive possession present a "spectrum" of factual scenarios from which we are to choose, and that this case falls in some ill-defined area of that spectrum in which insufficient evidence exists to support the finding.
¶ 44 Determining whether sufficient facts to support a finding of constructive possession were adduced at trial is simpler than that. This court explained how to determine whether the State did so in State v. Mathews, 4 Wash.App. 653, 484 P.2d 942 (1971). In Mathews, as in this case, drugs were found on the floor of a vehicle next to where a back-seat passenger was sitting. 4 Wash. App. at 655, 484 P.2d 942. Also as in this case, other evidence was presented by the State that tended to show that the passenger had dominion and control over the drugs for example, that the persons in the front seats of the car stated that the bag of drugs in the back seat "did not belong to them and they did not know that it was there." Mathews, 4 Wash.App. at 656-57, 484 P.2d 942. It was made clear in Mathews that sufficient evidence exists to support a jury's finding that a vehicle passenger exercised dominion and control over controlled substances present in the vehicle, and thus that the passenger constructively possessed the drugs, where the State proves "proximity" of the defendant to the controlled substances, "coupled with other circumstances linking" the defendant to them. Mathews, 4 Wash.App. at 658, 484 P.2d 942.
¶ 45 Once such evidence is presented, whether the circumstantial evidence of constructive possession "`excludes every reasonable hypothesis consistent with the [defendant's] innocence is a determination properly made by the trier of the facts. This court's only function on appeal is to determine if there is substantial evidence in the record tending to establish circumstances upon which a finding of guilt can be predicated.'" Mathews, 4 Wash.App. at 657-58, 484 P.2d 942 (quoting State v. Green, 2 Wash.App. 57, 70, 466 P.2d 193 (1970)) (emphasis added). Accordingly, in order to determine whether the State adduced sufficient evidence at trial to support George's convictions, the only inquiry that we should make is whether evidence was presented from which the jury could find that (1) George was located sufficiently near the pipe to exercise dominion and control over it, and (2) factors other than George's proximity to the pipe and its contents linked George to them.
¶ 46 The majority in effect concedes that the first part of the Mathews test was met, but glosses over the direct and circumstantial evidence, and the inferences to be drawn therefrom, that tend to prove that the second part of the Mathews test was met as well:
¶ 47 (1) When the vehicle's driver rolled the window down to speak with Trooper Thompson, the strong odor of recently burned marijuana vented into Trooper Thompson's face. From this, the jury reasonably could have inferred that marijuana had been smoked in the vehicle not long before the traffic stop occurred.
¶ 48 (2) Neither another pipe, nor rolling papers, nor any other item of paraphernalia was found in the vehicle. From this, the jury reasonably could have inferred that the pipe was used to smoke the marijuana that Trooper Thompson smelled.
¶ 49 (3) There was partially burned marijuana in the pipe when it was found in the search. No other marijuana was found in the vehicle. None of the men was found to be in physical possession of other marijuana. From this, the jury reasonably could have inferred that the marijuana residue was the source of the marijuana odor that had been sensed by Trooper Thompson and, thus, that the marijuana in the pipe had been smoked not long before the traffic stop occurred.
*703 ¶ 50 (4) George was in the vehicle at the time of the traffic stop. From this, combined with the presence of the odor of marijuana still in the vehicle, the jury reasonably could have inferred that George was in the vehicle at the time marijuana was smoked therein.
¶ 51 (5) Three men were present in the vehicle when it was stopped by Trooper Thompson. From this, the jury reasonably could have inferred that at least one of the men in the vehicle was a person who smoked the marijuana that Trooper Thompson smelled.
¶ 52 (6) Trooper Thompson found the pipe on the floorboard in the back seat, next to where George's feet had been prior to his removal from the vehicle. From this, the jury reasonably could have inferred that George was the last person to handle the pipe.
¶ 53 (7) Trooper Thompson did not see the pipe on the floorboard of the vehicle when he initially looked into it using his flashlight. However, after he separately removed both the vehicle's driver and its registered owner and placed them in his patrol car, patting them down as he did so, and after he separately removed George from the vehicle, he found the pipe on the vehicle's back seat floorboard. From this, the jury reasonably could have concluded that George had secreted the pipe on his person at the outset of the traffic stop but, upon seeing that he was going to be searched upon his removal from the vehicle, placed the pipe on the floorboard while either the driver or the registered owner were being secured in Trooper Thompson's patrol car.
¶ 54 (8) From all this evidence, the jury reasonably could infer that George had been handling the pipe and the marijuana residue therein for the purpose of smoking marijuana, and that the odor of burned marijuana in the vehicle was the result of him doing so.[1]
¶ 55 Thus, in addition to evidence offered to show George's physical proximity to the pipe and its contents, the State adduced significant evidence demonstrating George's temporal proximity to an eventthe recent burning of marijuana within the confined space of the vehiclefrom which the jury reasonably could have concluded that George knew that marijuana was being smoked in his presence immediately prior to the traffic stop initiated by Trooper Thompson, had handled the pipe containing the marijuana, had done so for the purpose of ingesting marijuana, and had been the last person in the vehicle to ingest marijuana using the pipe prior to Trooper Thompson stopping the vehicle. Notwithstanding all of this, the majority holds that "[t]he State's evidence boils down to mere proximity." If our task was to draw all inferences in George's favor, this might be so. But, of course, drawing inferences in such a manner is precisely what we do not do.
¶ 56 On the other hand, drawing all reasonable inferences in favor of the verdict, as should be done, Zunker, 112 Wash.App. at 135, 48 P.3d 344, leads to the common-sense conclusion that the evidence presented by the State was sufficient to support the jury's conclusion that George had participated in the smoking of the marijuana and, thus, had exercised dominion and control over the pipe and its contents.[2] Thus, the jury rationally *704 could have concluded that George was both in constructive possession of the marijuana residue contained in the pipe and had been using the pipe to smoke marijuana not long before Trooper Thompson stopped the vehicle. Accordingly, sufficient evidence was adduced at trial to support George's convictions. I dissent from the majority's holding to the contrary.
NOTES
[1] We liberally construe the subsection reference as "i" even though the officer's handwriting makes it appear to be an "L" on first glance. Our analysis does not depend on a resolution of whether this figure is an "L" or an "i."
[1] It is the above-recited sequence of reasonable inferences that distinguishes this case from our decision in State v. Cote, 123 Wash.App. 546, 96 P.3d 410 (2004). In that case, we found that the defendant's former presence as a passenger in a stolen truck, combined with his fingerprints on a mason jar containing chemicals used to manufacture methamphetamine found in the truck, provided insufficient evidence to sustain a conviction for constructively possessing controlled substances. Cote, 123 Wash.App. at 550, 96 P.3d 410. As we pointed out, "Mr. Cote was not in or near the truck at the time of his arrest," and "the fingerprint on the jar proves only that Mr. Cote touched it." Cote, 123 Wash.App. at 550, 96 P.3d 410. Moreover, the evidence at issue in Cote was in the "back of the stolen pickup," not in the passenger area where the defendant had previously been present. Cote, 123 Wash.App. at 550, 96 P.3d 410.

The facts in Cote are very different from the facts of this case, in that George was within the vehicle and was in close physical proximity to the contraband at the time the search of the vehicle was initiated, and given that the evidence suggests that marijuana was burned in the vehicle not long before the seizure occurred.
[2] To reiterate, and make absolutely clear, the law does not require exclusive possession of a controlled substance in order for a conviction for its possession to be sustained. State v. Turner, 103 Wash.App. 515, 522, 13 P.3d 234 (2000). Thus, the State was not required to prove that only George had smoked marijuana out of the pipe, or to disprove that either the vehicle's driver or its owner-passenger had done so.