[No. 44744-4-II.   Division Two.   December 30, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. GEOFFREY ROBERT LAWSON, *Appellant*.

350

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Farshad M. Talebi, Deputy*, for respondent.

¶1 JOHANSON, C.J. — A jury found Geoffrey Lawson guilty of one count of first degree burglary, two counts of second degree burglary, two counts of attempted voyeurism, and one count of voyeurism. Lawson appeals, alleging that there was insufficient evidence to support the burglary and voyeurism convictions. Lawson contends alternatively that his burglary convictions must be reversed because voyeurism does not constitute "a crime against a person or property" that the burglary statute requires. In the published portion of the opinion, we hold that voyeurism is a

crime against a person and that sufficient evidence supports the burglary and voyeurism convictions. We address Lawson's remaining claims in the unpublished portion of this opinion. We affirm his convictions.

## FACTS

### I. Background

¶2 In May 2012, Harrison Medical Center employee Ron Burrows entered one of the women's restrooms and began to sanitize the stall areas. As he opened the stall door, Lawson emerged and ran off despite Burrows's efforts to catch him. Harrison security manager Leon Smith identified Lawson from a security video that showed Lawson entering the hospital through the loading dock area. The video also showed Lawson entering and exiting the women's restroom over approximately four hours.

¶3 In June 2012, security officer J.K. was in the same women's restroom at Harrison when someone attempted to open the stall door. Startled, J.K. observed men's dress shoes underneath the door. J.K. viewed security video and determined by the man's pants and shoes that he was the same person who tried to enter the stall while she used the restroom. Meanwhile, other security officers confirmed that the suspicious man was Lawson, who had returned to Harrison a second time. Security Supervisor Charles Nace and Officer Dakota Muir contacted Lawson, but he resisted, causing Nace to fall to the floor with an injury.

¶4 Also in June 2012, A.S. used the women's restroom in a Barnes and Noble store. After washing her hands, A.S. saw a man peering into the main bathroom area over the stall door adjacent to the one she had used. According to A.S., the man, who she later identified as Lawson, quickly ducked, but A.S. could see him through a gap in the stall doors. A.S. reported the incident to Barnes and Noble employees. Assistant store manager Amy King reviewed a

store security video. The video showed Lawson surreptitiously entering the clearly marked women's restroom.

## II. PROCEDURE

¶5 The State charged Lawson by second amended information with one count of first degree burglary, two counts of second degree burglary, one count of second degree assault, one count of voyeurism, and two counts of attempted voyeurism. The jury returned guilty verdicts on each charge except for second degree assault.

## ANALYSIS

### INSUFFICIENT EVIDENCE OF BURGLARY AND VOYEURISM

¶6 Lawson asserts that the State failed to introduce sufficient evidence to prove the Barnes and Noble voyeurism charge and each of the burglary charges. We hold that there was sufficient evidence to prove that Lawson viewed another person in a place where she had a reasonable expectation of privacy and that a rational jury could have found that he committed assault while in or in immediate flight from a building in which he was not lawfully entitled to remain. Thus, we conclude that sufficient evidence supports Lawson's voyeurism and burglary convictions.

### A. STANDARD OF REVIEW

¶7 To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014) (citing *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)). The relevant question is " 'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). In claiming insufficient evidence, the defen-

dant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d at 35 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We interpret the evidence " 'most strongly against the defendant.' " *Homan*, 181 Wn.2d at 106 (quoting *Salinas*, 119 Wn.2d at 201). We consider both circumstantial and direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

### B. Voyeurism: Reasonable Expectation of Privacy in the Restroom

¶8 Lawson contends that the State presented insufficient evidence that at Barnes and Noble he viewed another person in a place where she would have a reasonable expectation of privacy because he viewed A.S. when she stood by the sink in the restroom. Lawson attempts to draw a distinction between the private toilet stall and the other areas of the restroom where there would be no expectation of privacy. We hold that a person has a reasonable expectation of privacy inside a restroom.

¶9 Under RCW 9A.44.115(2)(a), a person commits the crime of voyeurism if he knowingly views another person in a place where that person would have a reasonable expectation of privacy. For purposes of the crime of voyeurism, RCW 9A.44.115(1) states,

(c) "Place where he or she would have a reasonable expectation of privacy" means:

(i) A place where a reasonable person would believe that he or she could disrobe in privacy, without being concerned that his or her undressing was being photographed or filmed by another; or

(ii) A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance;

(d) "Surveillance" means secret observation of the activities of another person for the purpose of spying upon and invading the privacy of the person.

Lawson's argument is inconsistent with this statutory definition as our courts have construed it.

¶10 In *State v. Glas*, 147 Wn.2d 410, 415, 54 P.3d 147 (2002), our Supreme Court considered which places a person would " 'reasonably expect to be safe from casual or hostile intrusion or surveillance.' " (Quoting former RCW 9A.44-.115(1)(b)(ii) (1998), *recodified as* RCW 9A.44.115(1)(c)(ii).) The *Glas* court provided examples of locations where RCW 9A.44.115(1)(c)(ii) would apply. 147 Wn.2d at 416. These locations include places where a person may not normally disrobe but, if he or she did, he or she would expect a certain level of privacy as they would in a person's bedroom or bathroom, or a locker room where someone may undress in front of others. *Glas*, 147 Wn.2d at 416. It would also apply to places where someone may not normally disrobe but would nonetheless expect another not to intrude, either casually or hostilely. *Glas*, 147 Wn.2d at 416. Our Supreme Court distinguished these kinds of places from purely public locations, such as the shopping mall or the Seattle Center. *Glas*, 147 Wn.2d at 414.

¶11 Here, it is undisputed that A.S. saw Lawson peeking over the restroom stall door in a place that was clearly delineated for use by women only. Although the women's restroom was inside an otherwise public building and while a person might not usually disrobe inside the common area, one expects privacy in a restroom. *Glas*, 147 Wn.2d at 416. Specifically, a woman using a women's restroom expects a certain degree of privacy from surveillance or from intrusions, either casual or hostile, by members of the opposite sex. Accordingly, we hold that the State presented evidence sufficient for a rational trier of fact to have found that Lawson committed voyeurism by viewing A.S. in a place where she reasonably expected to be safe from casual or hostile intrusion or surveillance and, therefore,

where she had a reasonable expectation of privacy.[1] There-fore, we affirm Lawson's voyeurism conviction.

## C. Burglary: A Crime against Persons or Property

¶12 Lawson next argues that the evidence is insufficient to support the second degree burglary convictions because voyeurism is not "a crime against a person or property," which is a prerequisite to a burglary conviction.[2] This argument fails. Lawson relies on *State v. Devitt*, 152 Wn. App. 907, 912-13, 218 P.3d 647 (2009), where Division Three of this court held that obstructing the police was not a crime against persons or property for the purpose of a conviction for second degree burglary. There, the court reached its conclusion in part because the crime at issue was not listed among several others as a crime against a person under RCW 9.94A.411, a provision of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, that governs prosecutorial standards. But our Supreme Court's decision in *State v. Snedden*, 149 Wn.2d 914, 73 P.3d 995 (2003), offers a more apt comparison.

¶13 In *Snedden*, our Supreme Court held that indecent exposure was a crime against a person and there-fore could serve as the predicate crime for second degree burglary. 149 Wn.2d at 919. There, the court considered the same argument Lawson advances now, that the subject crime was not one "against a person" because it did not appear among the list of such crimes within RCW 9.94A-.411. *Snedden*, 149 Wn.2d at 922. The *Snedden* court found this unpersuasive. The court found that RCW 9.94A.411

---

[1] Lawson also argues that the evidence was insufficient to support the voyeur-ism conviction because there is no evidence that Lawson viewed A.S.'s intimate areas during the Barnes and Noble incident. But viewing a person's intimate areas is merely one of two alternative means of committing voyeurism. The State did not need to prove that its evidence supported the intimate areas alternative because it argued only the reasonable expectation of privacy means.

[2] A person is guilty of second degree burglary if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or dwelling. RCW 9A.52.030(1).

lists crimes for the purpose of establishing a list of prosecuting standards and, as such, serves a wholly different purpose than the second degree burglary statute. *Snedden*, 149 Wn.2d at 922. Additionally, the court concluded that this list was not applicable in context because it was enacted several years after the second degree burglary statute and, therefore, the list could not have been considered by the legislature when adopting the burglary statute. *Snedden*, 149 Wn.2d at 922. And furthermore, the SRA list and second degree burglary statutes are contained in separate chapters of the criminal code, which supports the notion that the legislature did not intend the SRA list to be used as an interpretive device in other chapters of the code. *Snedden*, 149 Wn.2d at 922.

¶14 Additionally, the language of the voyeurism statute itself lends credence to the position that voyeurism is a "crime against a person." A person commits voyeurism either when he or she views another *person* without that *person's* knowledge in a place where *he* or *she* has a reasonable expectation of privacy or when that person views the intimate areas of another *person*. RCW 9A.44.115(2)(a)-(b).

¶15 Accordingly, we hold that voyeurism is a crime against a person and, therefore, can serve as the predicate crime for second degree burglary. We hold further that the State presented sufficient evidence for a rational trier of fact to conclude that Lawson is guilty of the second degree burglaries because he entered the women's restrooms with the intent to commit a crime against a person or property. Therefore, we affirm Lawson's second degree burglary convictions.

D. Burglary: Immediate Flight

¶16 Finally, Lawson argues that the evidence was insufficient to support his first degree burglary conviction because it requires proof that "in entering or while in the

building or in immediate flight therefrom, the actor or another participant in the crime . . . (b) assaults any person." RCW 9A.52.020(1). Lawson maintains that he was not in "immediate flight" from the restroom at Harrison because he was stopped by security officer Nace elsewhere in the building and because there was no testimony that Lawson appeared to be fleeing from the scene.

¶17 Lawson ignores the statute's language that provides that he can be guilty of first degree burglary if he assaults someone "while in the building." Nace first encountered Lawson outside the restroom that Lawson had entered previously. Nace and another officer took Lawson by each arm to escort him toward the lobby when Lawson began to struggle to try to get away. Lawson was shoving, pushing, pulling, and trying to free his arms. At some point during the struggle, Lawson either kneed Nace or kicked Nace in the knee, causing Nace to fall in pain. Viewed in a light most favorable to the State, this is sufficient evidence for a rational trier of fact to conclude that the State proved that Lawson assaulted Nace "while in the building or in immediate flight therefrom." RCW 9A.52.020(1). We hold that Lawson's claim fails for this reason.

¶18 In conclusion, we hold that sufficient evidence supports Lawson's voyeurism, second degree burglary, and first degree burglary convictions. We address Lawson's remaining claims in the unpublished portion of this opinion. We affirm his convictions.

¶19 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN and MAXA, JJ., concur.