FILED
COURT OF APPEALS
DIVISION II

2015 JUN 23 AM 8: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45498-0-II |
| Respondent, | |
| v. | |
| LANCE LARSON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Lance Larson appeals his conviction for possession of a controlled substance,[1] bail jumping conviction,[2] and his concurrent sentences of 12 months and 1 day. He argues that (1) there is insufficient evidence to support the possession conviction, (2) the bail jumping charge did not adequately notify him of the essential elements of the charge and the jury instruction on bail jumping is erroneous, (3) he received ineffective assistance of counsel, and (4) the trial court erred by imposing legal financial obligations (LFOs). The State concedes that the jury demand fee was excessive and that the expert witness fee should be stricken. We affirm Larson's convictions, but because the trial court did not consider Larson's financial circumstances and his ability to pay the discretionary LFOs, we remand for a new sentencing hearing to reassess Larson's financial circumstances and his ability to pay discretionary LFOs; we also strike the $100 expert witness fee.

---

[1] RCW 69.50.4013.

[2] RCW 9A.76.170(3)(c).

FACTS

On January 7, 2013, detectives from the Kitsap County Sheriff's Office served a search warrant on a property in Poulsbo, Washington. They detained several people, including Larson, and placed him in a patrol vehicle at the scene. After advising him of his rights, the detectives asked Larson where he lived; he stated that he lived with his girlfriend in the trailer at the front of the property. They asked Larson when he last used methamphetamine, he said that he last used methamphetamine on New Year's Eve; he also told the detectives that he was on Department of Corrections (DOC) supervision and that he recently went to jail for several days after a positive urinalysis for methamphetamine. Larson also said that there might be a methamphetamine pipe in his bedroom.

A detective entered Larson's bedroom and located a "glass methamphetamine smoking pipe" in a box next to Larson's bed. Verbatim Report of Proceedings (VRP) at 140-41. The box also contained pay stubs, social security stubs, and other personal documents belonging to Larson. A Washington State Patrol Crime Lab analysis of the smoking pipe found it contained methamphetamine residue.

The State charged Larson with possession of a controlled substance (methamphetamine). At his March 26, 2013 arraignment, at which Larson was present, the trial court scheduled a hearing for May 14. The trial court advised Larson that his "next mandatory court appearance [was] May 14," and Larson responded, "Okay. Thank you." VRP at 304. Larson failed to appear on May 14 and the trial court issued a warrant for his arrest. The State then amended Larson's charges to add one count of felony bail jumping, RCW 9A.76.170(3)(c).

Larson testified at trial and explained that, in December 2012 and January 2013, DOC supervised him and subjected him to random urinalysis tests. He testified that he smoked methamphetamine on New Year's Eve of 2012 and that on January 4, 2013 his urinalysis tested positive for methamphetamine.

After the defense rested, defense counsel moved to suppress Larson's admission that he had smoked methamphetamine on New Year's Eve and possessed methamphetamine up to his arrest on January 7, arguing that no other corroborating evidence existed to prove the corpus delicti-possession of a controlled substance. The trial court disagreed and explained that Larson testified that he had used methamphetamine on New Year's Eve and that, even without this in-court testimony, circumstantial evidence, such as the positive urinalysis test, independently corroborated the State's controlled possession charge.

Larson's counsel asked the trial court to define the two instances of possession in the jury instruction for (1) the New Year's Eve incident, and (2) the methamphetamine pipe that officers found on January 7. The trial court agreed and included jury instruction 9, which provided that the State must prove "one particular act of Possession of a Controlled Substance Methamphetamine . . . beyond a reasonable doubt, and [that the jury] must unanimously agree as to which act has been proved," but that the jury need not agree that Larson committed all the acts of possession. VRP at 410; Suppl. Clerk's Papers (Suppl. CP) at 50. Larson did not object to the trial court's jury instructions 12 and 13, which provided the definition of bail jumping and the "to convict" instruction for bail jumping, respectively. Suppl. CP at 53-54.

The jury convicted Larson of both the possession and bail jumping charges. By special verdict, jurors did not unanimously agree that Larson possessed the methamphetamine pipe and

residual methamphetamine found in his home but did unanimously agree that he possessed methamphetamine on or between December 31, 2012 and January 1, 2013.

The trial court sentenced Larson to standard range sentences of 12 months and 1 day of confinement for count I and count II, to be served concurrently. Over Larson's objection, the trial court ordered Larson to pay a "jury demand fee" of $1,439.74. VRP at 514, 526. In its judgment and sentence, the trial court also imposed $1,135.00 in attorney fees, a $100.00 contribution to the Kitsap County Expert Witness Fund, and a $500.00 contribution to the Kitsap County Sheriff's Office. The trial court entered a finding that Larson had the present or future ability to pay these LFOs. Larson did not object to this finding or present evidence regarding his financial condition. Larson appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Larson argues (1) that his admission that he smoked methamphetamine on New Year's Eve is not sufficient evidence, without corroboration, to prove the possession charge beyond a reasonable doubt, and (2) that, even if the fact finder relied on his admission and positive urinalysis as circumstantial evidence that he physically held the methamphetamine pipe at a party on New Year's Eve, that evidence is insufficient to convict him because his possession was merely "momentary, passing control of a controlled substance." Br. of Appellant at 10. We disagree and hold that sufficient evidence supports Larson's possession conviction.

A challenge to the sufficiency of the evidence admits the truth of the State's evidence, and we draw all reasonable inferences from the evidence in favor of the State. *State v. Harrington*, 181 Wn. App. 805, 816, 333 P.3d 410, *review denied*, 337 P.3d 326 (2014); *State v. Wentz*, 149

4

Wn.2d 342, 347, 68 P.3d 282 (2003). Circumstantial evidence and direct evidence are considered equally reliable when weighing the sufficiency of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004); *State v. A.T.P.-R*, 132 Wn. App. 181, 184-85, 130 P.3d 877 (2006). We leave credibility determinations for the trier of fact and do not review them on appeal. *State v. Lawson*, 185 Wn. App. 349, 354, 340 P.3d 979 (2014). The relevant inquiry, therefore, is whether, after "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Vasquez*, 178 Wn.2d 1, 6, 309 P.3d 318 (2013) (quoting *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999)). The jury did not find Larson guilty of possessing the methamphetamine in his bedroom on January 7 at the time of his arrest, but convicted him of possession on New Year's Eve.

To determine if Larson possessed the methamphetamine, we look at the totality of the circumstances to determine whether it supports a reasonable inference that he had dominion and control over the items. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008). Possession and control need not be exclusive nor of great duration, and the quantity that he possessed is not relevant. *George*, 146 Wn. App. at 920; *State v. Chavez*, 138 Wn. App. 29, 34, 156 P.3d 246 (2007).

Neither ingestion of nor the presence of a controlled substance in a person's body alone is sufficient to prove possession of the substance, *A.T.P.-R*, 132 Wn. App. at 185, nor is momentary handling or passing control of a controlled substance sufficient to establish possession. *George*, 146 Wn. App. at 920. And Washington courts have held that either admitting to ingesting a controlled substance, or having a positive urinalysis, independently may not be sufficient to sustain

a possession conviction; but "[w]hen combined with other corroborating evidence, . . . assimilation of [a controlled substance] can be sufficient to prove possession." *A.T.P.-R*, 132 Wn. App. at 185 (possession of alcohol) (citing *State v. Dalton*, 72 Wn. App. 674, 676, 865 P.2d 575 (1994)). Thus, a positive urinalysis test can be considered circumstantial evidence of possession of a controlled substance. *Dalton*, 72 Wn. App. at 676.

Here, on January 7, Larson told the arresting officer that he ingested methamphetamine, he testified in court that he ingested methamphetamine, his urinalysis test showed methamphetamines, and officers found a methamphetamine pipe next to Larson's bed, in a box with Larson's possessions. Because we draw all reasonable inferences from the evidence in favor of the State, we hold that sufficient evidence supports Larson's conviction for possession of methamphetamine. *Harrington*, 181 Wn. App. at 816.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Larson argues that he received ineffective assistance of counsel because, under the corpus delicti rule, counsel failed to move pretrial to suppress Larson's inculpatory statement that he possessed methamphetamine on December 31. We disagree.

Ineffective assistance of counsel is an issue of constitutional magnitude that an appellant can raise for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); RAP 2.5(a). To establish ineffective assistance of counsel, the defendant must establish that his attorney's deficient performance prejudiced the defendant. *Kyllo*, 166 Wn.2d at 862 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)). Counsel's performance is deficient if, based on all the circumstances, it falls "'below an objective standard of reasonableness'" and if it

cannot "be characterized as legitimate trial strategy or tactics." *Kyllo*, 166 Wn.2d at 862-63 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)); U.S. CONST. amend. VI. To show prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

Larson argues that his counsel failed to move to suppress Larson's admission that he possessed methamphetamine on December 31 under the corpus delicti rule. "'Corpus delicti' means 'body of the crime' and [the rule] prevents convictions for crimes that never occurred." *State v. Dow*, 168 Wn.2d 243, 247 n.1, 227 P.3d 1278 (2010) (quoting *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). The "'purpose of the corpus delicti rule is to protect a defendant from an unjust *conviction* based on a false confession alone.'" *State v. Hendrickson*, 140 Wn. App. 913, 921, 168 P.3d 421 (2007) (quoting *State v. Rooks*, 130 Wn. App. 787, 802, 125 P.3d 192 (2005)); *see also Dow*, 168 Wn.2d at 249.

The corpus delicti rule requires suppression of an inculpatory statement to the police if it is not corroborated by independent evidence. *See State v. Whalen*, 131 Wn. App. 58, 62, 126 P.3d 55 (2005). But the rule only applies to extrajudicial statements, such as Larson's statements to arresting detectives that he used methamphetamine on New Year's Eve, not to his in-court testimony of the same. *See State v. C.M.C.*, 110 Wn. App. 285, 288, 40 P.3d 690 (2002).

Because the trial court did not err in denying Larson's corpus delicti argument, and because evidence in addition to Larson's testimony corroborated his statements to police, counsel's failure to raise the losing motion pretrial did not fall "'below an objective standard of reasonableness.'" *Kyllo*, 166 Wn.2d at 862 (quoting *McFarland*, 127 Wn.2d at 334-35). And because the trial court

7

stated that the positive urinalysis test was corroborating evidence, the timing of counsel's corpus delicti argument was unlikely to have any effect on the trial court's ruling. Because Larson fails to show prejudice, or that a pretrial motion to suppress would have affected the trial's outcome, we reject his ineffective assistance argument.

### III. BAIL JUMPING

Larson argues that his bail jumping conviction violated due process because the trial court's "to convict" jury instruction 13[3] relieved the State of its burden to prove each element of the charged offense beyond a reasonable doubt, and the information violated his right to adequate notice as to the bail jumping charge. Because the court's instructions included all elements of the offense, we reject his argument.

---

[3] Jury instruction 13 read as follows:

To convict the defendant of the crime of Bail Jumping as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt—
(1) That on or about May 14, 2013, the defendant failed to appear before a court;
(2) That the defendant was charged with a class B or class C felony;
(3) That the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court; and
(4) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
Suppl. CP at 54.
Jury Instruction 12 read as follows:
A person commits the crime of Bail Jumping when he or she fails to appear as required after having been released by court order with knowledge of the requirement of a subsequent personal appearance before a court in which the person was charged with a class B or class C felony.
Suppl. CP at 53.

No. 45498-0-II

## A. "To Convict" Instruction

We review alleged constitutional violations de novo. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013). An appellant may raise for the first time on review a manifest error affecting a constitutional right. RAP 2.5(a)(3). We also review jury instructions de novo. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012).

"A trial court's failure to instruct the jury as to every element of the crime charged violates due process." *State v. Hassan*, 184 Wn. App. 140, 148, 336 P.3d 99 (2014); U.S. CONST. amend. XIV. A "'to convict [jury] instruction must contain all of the elements of the crime,'"[4] and "'must make the relevant legal standard manifestly apparent to the average juror.'" *Kyllo*, 166 Wn.2d at 864 (quoting *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997)).

To convict a person for bail jumping,[5] the State must prove that the person "'(1) was held for, charged with, or convicted of *a particular crime*, (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance, and, (3) knowingly failed to appear as required.'" *State v. Williams*, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007) (quoting *State v. Pope*, 100 Wn. App. 624, 627, 999 P.2d 51 (2000)). Larson argues that jury instruction 13 relieved the State of its burden to prove the element that Larson failed to appear at the hearing "as required." Br. of Appellant at 17.

But instruction 13, which mirrors the "to convict" instruction in 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 120.41, at 177 (3d ed. 2008) (WPIC), states that

---

[4] *State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 135 (2014) (alteration in original) (quoting *State v. Sibert*, 168 Wn.2d 306, 311, 230 P.3d 142 (2010)).

[5] RCW 9A.76.170.

9

the State must prove that Larson failed to appear and that he "had been released by court order with knowledge *of the requirement* of a subsequent personal appearance before that court." Suppl. CP at 54 (emphasis added). And instruction 12, which mirrors the definition of bail jumping in WPIC 120.40, states that a person commits the crime of bail jumping only when he or she "fails to appear *as required* after having been released by court order with knowledge of the requirement of a subsequent personal appearance." Suppl. CP at 53 (emphasis added). Both instructions 12 and 13 include language requiring the defendant to appear; accordingly, we reject Larson's arguments and hold that the court's instructions were sufficient to adequately inform the jury of the elements of bail jumping.

### B. Charging Document

Larson argues, for the first time on appeal, that his charging document failed to provide him with adequate notice of the bail jumping charge against him and violated the United States Constitution amendment VI and Washington Constitution article I, section 22. We hold that the charging documents included all of the essential elements of the offense.

We review a challenge to the sufficiency of a charging document de novo. *Williams*, 162 Wn.2d at 182. A charging document must allege "'[a]ll essential elements of a crime,'" statutory or otherwise, to provide a defendant with sufficient notice of the nature and cause of the accusation against him. *Zillyette*, 178 Wn.2d at 158 (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22). To satisfy this requirement, the information must allege (1) "every element of the charged offense" and (2) "particular facts supporting them." *State v. Nonog*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010); *see State v. Simms*, 171 Wn.2d 244, 250, 250 P.3d 107 (2011). When a defendant challenges a charging document's

sufficiency for the first time on appeal, we construe the document liberally in favor of validity. *Zillyette*, 178 Wn.2d at 161.

Larson argues that the charging document omitted the essential element that he had failed to appear "as required." Br. of Appellant at 19. The charging document included the following language: "On or about May 14, 2013 . . . Defendant, having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before a court of this state . . . did fail to appear." CP at 2. And the phrase "with knowledge of the requirement of a subsequent personal appearance" provided Larson with adequate notice that he was required to personally appear. CP at 2. This language not only matches the language in the bail jumping offense statute, RCW 9A.76.170(1), but also matches the language in other bail jumping convictions where the statutory language adequately provided the elements of the crime. *See, e.g., State v. Fredrick*, 123 Wn. App. 347, 352, 97 P.3d 47 (2004); *see also State v. Downing*, 122 Wn. App. 185, 192-93, 93 P.3d 900 (2004). And because we must construe the document liberally in favor of validity, we reject Larson's challenge to the validity of his bail jumping conviction. *Zillyette*, 178 Wn.2d at 161.

## IV. LEGAL FINANCIAL OBLIGATIONS

Larson argues that the trial court erred in ordering Larson to pay various LFOs. He argues that (1) these fees are not authorized under RCW 9.94A.760 and RCW 10.01.160, and cannot be imposed without a court first determining whether he had the "ability or likely future ability" to pay them, Br. of Appellant at 26, (2) imposing the cost of his court-appointed attorney violates the United States Constitution, amendments VI and XIV, (3) the jury demand fee exceeds what is authorized in RCW 36.18.016(3)(b), and (4) a $100 expert witness fee is not appropriate when the

11

State did not call an expert at trial. The State argues that he waived these issues by not objecting at trial. But the State concedes that the jury demand fee is limited to $250 in RCW 36.18.016, and concedes that we should strike the $100 expert witness fee imposed on Larson because the State did not have to pay for an expert to appear at trial. Because the trial court did not consider Larson's financial circumstances and his ability to pay discretionary LFOs, we remand for a new sentencing hearing in order for the court to conduct an individualized inquiry to determine Larson's ability to pay LFOs, and we strike the $100 expert witness fee.

If the trial court enters a finding in the judgment and sentence, we review it under the clearly erroneous standard. *State v. Lundy*, 176 Wn. App. 96, 105, 308 P.3d 755 (2013). Clear error exists when review of the record leads to a definite conclusion that a mistake was committed. *Lundy*, 176 Wn. App. at 105.

Larson's LFOs consisted of $1,135.00 in attorney fees, a $1,439.74 jury demand fee, a $100.00 expert witness fund fee, a $100.00 deoxyribonucleic acid (DNA) testing fee, a $200.00 court filing fee, a $500.00 crime victim assessment fee, a $1,000.00 drug crime fee under RCW 69.50.430, and a $500.00 fee paid to the Kitsap County Sheriff's Office under RCW 9.94A.760. Crime victim assessments, DNA fees, drug crime fees, and criminal filing fees are mandatory LFOs and the court lacks discretion to consider a defendant's ability to pay when imposing them. *Lundy*, 176 Wn. App. at 102; RCW 69.50.430. To the extent that the trial court imposed mandatory LFOs, we find no error in Larson's sentence.

This leaves the $1,135.00 in attorney fees, a $1,439.74 jury demand fee, a $100.00 expert witness fee, and a $500.00 fee paid to the Kitsap County Sheriff's Office. These are discretionary

LFOs that *may* be imposed by a court. *See State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992).

Larson did not object below to the trial court's imposition of discretionary LFOs. "A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review," and an "'appellate court may refuse to review any claim of error which was not raised in the trial court.'" *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015) (quoting RAP 2.5(a)). But RAP 2.5(a) grants us discretion to review issues raised for the first time on appeal and thus we may consider unpreserved challenges to findings on a defendant's ability to pay discretionary LFOs; we exercise it here. *Blazina*, 182 Wn.2d at 833.

For mandatory LFOs, "the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing these obligations. For victim restitution, victim assessments, DNA fees, and criminal filing fees, the legislature has directed expressly that a defendant's ability to pay should not be taken into account." *Lundy*, 176 Wn. App. at 102.

But as to the discretionary LFOs, RCW 10.01.160(3) provides that a sentencing court

> shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

In *Blazina*, the court held that this language obligates sentencing courts to inquire into a criminal defendant's financial circumstances and ability to pay before imposing discretionary LFOs as sentencing conditions. *Blazina*, 182 Wn.2d at 839. Moreover, a cursory inquiry is insufficient:

> [T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

*Blazina*, 182 Wn.2d at 838.

And although the State concedes that the jury demand fee is limited to $250 in RCW 36.18.016, this is also a discretionary fee that "may be imposed" upon a criminal defendant. RCW 36.18.016(3)(b). Accordingly, the attorney fees, the jury demand fee, and $500 Kitsap County Sheriff's Office fee are discretionary LFOs for which the sentencing court was required to consider Larson's financial circumstances and his ability to pay. We agree with the State that we should strike the $100 expert witness fee because the State did not have to pay for an expert to appear at trial.

Larson fails to show that (1) the State presented insufficient evidence to convict him of possession of a controlled substance, (2) he received ineffective assistance of counsel, (3) his bail jumping conviction violated his constitutional rights, and (4) the trial court erred in imposing

No. 45498-0-II

mandatory LFOs. We affirm Larson's convictions, but because the trial court did not consider Larson's financial circumstances, we remand for a new sentencing hearing to reassess Larson's financial circumstances and his ability to pay discretionary LFOs and we strike the $100 expert witness fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, J.

MELNICK, J.

15