187 P.3d 301 (2008)
STATE of Washington, Respondent,
v.
Adrian IBARRA-RAYA, Appellant.
State of Washington, Respondent,
v.
Gilberto Ibarra-Cisneros, Appellant.
Nos. 25734-7-III, 25735-5-III.
Court of Appeals of Washington, Division 3.
July 1, 2008.
*303 Janelle Carman, C. Dale Slack, Carman Law Office Inc., Walla Walla, WA, for Appellants.
Gabriel Eliud Acosta, Attorney at Law, Walla Walla, WA, for Respondent.
BROWN, J.
¶ 1 First, Adrian Ibarra-Raya appeals his controlled substance convictions flowing from an early morning protective search of his residence after a neighbor in a Walla Walla neighborhood complained of noise coming from a house that was vacant during the day. We reverse Mr. Ibarra-Raya's convictions because officers entered his residence without a warrant or warrant exception; thus, the trial court erred by denying Mr. Ibarra-Raya's CrR 3.6 evidence suppression motion. Second, in a consolidated appeal, Gilberto Ibarra-Cisneros challenges the evidence sufficiency of his throw-down cocaine possession conviction that developed in a parking lot as officers approached him when investigating a call received on Mr. Ibarra-Raya's cell phone after he was arrested. Because the intervening circumstances attenuated any taint from the cell phone use, and the evidence is otherwise sufficient, we affirm Mr. Ibarra-Cisneros' conviction.

FACTS
¶ 2 At about 2:27 am on July 14, 2006, a neighbor called 911, regarding noise coming from a nearby house in Walla Walla that looked vacant during the day. Officers took the call as "noise coming from a vacant house." Report of Proceedings (RP) (Adrian Ibarra-Raya) at 86. When officers arrived at the house, they saw lights on and heard party noise, but reported nothing exceptional. A truck without a license plate, but with a temporary permit, was in the driveway. The vehicle identification number (VIN) check came back "stolen out of California." RP (Adrian Ibarra-Raya) at 87.
¶ 3 Two officers then knocked on the front door; immediately the lights in the living room went off. Walla Walla Police Officer Tim Morford was on the side of the house and saw two men, one later identified as Mr. Ibarra-Raya, go into a room off the hallway *304 and then come out of the room and open the back door. Officer Morford ordered the men to remain in the house. Officer Morford then followed the two men into the house and conducted a protective sweep, seeing marijuana and a bundle of cash. At this point, the officers learned that solely the truck's license plates had been stolen and that Mr. Ibarra-Raya was subleasing the house. Based on Officer Morford's observations, officers obtained a search warrant that led to the discovery of cocaine, over $400,000 sealed in plastic bags, and marijuana. Officers arrested Mr. Ibarra-Raya.
¶ 4 While at the police station, Mr. Ibarra-Raya's cell phone rang repeatedly. A drug enforcement administration agent eventually answered. A person later identified as Mr. Ibarra-Cisneros asked for his brother. Mr. Ibarra-Cisneros became agitated and threatening when the agent would not put Mr. Ibarra-Raya on the phone. The two agreed to meet in a parking lot where undercover officers saw a pickup pull in with Mr. Ibarra-Cisneros as the passenger. The officers followed the pickup to a mall parking lot where Mr. Ibarra-Cisneros got out of the vehicle and stood beside it.
¶ 5 At trial, the officers testified they approached Mr. Ibarra-Cisneros and found a bindle on the ground where he was standing that contained cocaine. It was fresh looking without dust on it. After he was arrested, Mr. Ibarra-Cisneros volunteered, "If you saw me drop it, then I'll admit it's mine. . . . But if you didn't see me drop it then you can't charge me with it." RP (Gilberto Ibarra-Cisneros) at 210-11.
¶ 6 The State charged Mr. Ibarra-Raya with possession of a controlled substance  marijuanawith intent to deliver, and possession of a controlled substancecocaine. The State charged Mr. Ibarra-Cisneros with possession of a controlled substancecocaine. The court denied their evidence suppression motions based on an illegal house search for the evidence seized at the house. The brothers separately appealed.

ANALYSIS

A. Evidence Suppression Motions
¶ 7 The issue is whether the trial court erred in ruling the initial entry into Mr. Ibarra-Raya's house was a lawful protective sweep and denying the brothers' evidence suppression motion.
¶ 8 "In reviewing a trial court's denial of a suppression motion, we review challenged findings of fact for substantial supporting evidence." State v. Lawson, 135 Wash.App. 430, 434, 144 P.3d 377 (2006). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). We review the trial court's conclusions of law de novo. State v. Levy, 156 Wash.2d 709, 733, 132 P.3d 1076 (2006).
¶ 9 Warrantless searches of constitutionally protected areas are presumed unreasonable absent proof of a well-established exception. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). The State bears the burden of establishing such an exception. State v. Potter, 156 Wash.2d 835, 840, 132 P.3d 1089 (2006).
¶ 10 Relevant here, the police may enter a building without a warrant when facing exigent circumstances (emergency exception). The exception recognizes the "`community caretaking function of police officers, and exists so officers can assist citizens and protect property.'" State v. Schlieker, 115 Wash.App. 264, 270, 62 P.3d 520 (2003) (quoting State v. Menz, 75 Wash. App. 351, 353, 880 P.2d 48 (1994)). The emergency exception justifies a warrantless entry when: (1) the officer subjectively believes that there is an immediate risk to health or safety; (2) a reasonable person in the same situation would come to the same conclusion; and (3) there is a reasonable basis to associate the emergency situation with the place searched. State v. Gocken, 71 Wash.App. 267, 276-77, 857 P.2d 1074 (1993). A court examining these factors must consider "whether the officer's acts were consistent with his or her claimed motivation." State v. Downey, 53 Wash.App. 543, 545, 768 P.2d 502 (1989).
¶ 11 We evaluate whether the officer's acts in the face of a perceived emergency *305 were objectively reasonable. State v. Lynd, 54 Wash.App. 18, 22, 771 P.2d 770 (1989). The Ninth Circuit has similarly defined "exigent circumstances" as "`those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers and other persons, the destruction of relevant evidence, the escape of the suspects or some other consequence improperly frustrating legitimate law enforcement efforts.'" United States v. Echegoyen, 799 F.2d 1271, 1278 (9th Cir.1986) (quoting United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.1984)). Thus, a substantial risk to persons or property, including property with evidentiary value, is required for an emergency exception application.
¶ 12 Here, the intruding officers believed they were investigating noises that were coming from a vacant house, but the record shows the report was simply for noises coming from a house that appeared to be vacant during the day. No immediate risk to health or safety is shown. The officers arrived at the house, heard noises and investigated the vehicle parked in an ungated driveway to check whether a new occupant resided in the house; arguably their activities were legitimate police business. See State v. Seagull, 95 Wash.2d 898, 902, 632 P.2d 44 (1981) ("It is clear that police with legitimate business may enter areas of the curtilage which are impliedly open."). They found what they believed was a stolen truck, although it turned out that just the license plate was stolen. While the police suspected criminal activity, the facts would not lead a reasonable person to suspect a substantial risk to the persons or property within the house or a reasonable basis for an emergency search. Thus, the exigent circumstance exception to the general warrant requirement is not applicable to our facts.
¶ 13 After knocking and preventing the departure of the two occupants, rather than stopping, identifying, and questioning the occupants as intended, Officer Morford, without exigent circumstances to support a community caretaking purpose, entered the home and impermissibly collected the evidence used to obtain a search warrant. Therefore, the trial court erred in not denying the brothers' suppression motion. Having so found, we need not analyze Mr. Ibarra-Raya's cumulative error contention. However, we do need to examine Mr. Ibarra-Cisneros' evidence insufficiency contention because any connection between Mr. Ibarra-Raya's cell phone and the bindle found at Mr. Ibarra-Cisneros's feet is too attenuated to affect his cocaine possession conviction, when considering the intervening circumstances, temporal factors, and lack of flagrant police conduct. State v. Tan Le, 103 Wash.App. 354, 360-62, 12 P.3d 653 (2000).

B. Evidence Supporting Mr. Ibarra-Cisneros' Conviction
¶ 14 Was the evidence sufficient to support Mr. Ibarra-Cisneros' possession of cocaine conviction, considering the evidence of constructive possession?
¶ 15 When a defendant challenges evidence sufficiency in a criminal case, we review the evidence most favorably for the State. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004). Evidence is sufficient to support a conviction when it permits a rational trier of fact to find that the State established the essential elements of the crime beyond a reasonable doubt. Id. A defendant challenging the sufficiency of the evidence admits the truth of the State's evidence, requiring us to draw all possible inferences for the State. Id. We defer to the finder of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. Id. at 874-75, 83 P.3d 970.
¶ 16 Under RCW 69.50.4013(1), it is unlawful to possess a controlled substance. Possession can be actual or constructive. State v. Staley, 123 Wash.2d 794, 798, 872 P.2d 502 (1994). Actual possession requires that the controlled substance be in the personal, physical custody of the person charged with the crime. State v. Callahan, 77 Wash.2d 27, 29, 459 P.2d 400 (1969). Because nothing in our record shows Mr. Ibarra-Cisneros was in physical custody of cocaine, the evidence presented at trial must support a finding of constructive possession.
*306 ¶ 17 Constructive possession involves "dominion and control" over the drugs in question or the premises in which they are discovered. Callahan, 77 Wash.2d at 29, 459 P.2d 400. Mere proximity to a controlled substance alone is insufficient to show dominion and control. State v. Bradford, 60 Wash. App. 857, 862, 808 P.2d 174 (1991). Various factors determine dominion and control, and the cumulative effect of a number of factors is a strong indication of constructive possession. State v. Partin, 88 Wash.2d 899, 906, 567 P.2d 1136 (1977). We must look at all the evidence tending to establish circumstances from which the jury could reasonably infer the defendant had dominion and control of the drugs to establish constructive possession. Id.
¶ 18 Here, Mr. Ibarra-Cisneros called and inquired about his brother who was at that time in custody and being investigated for delivering a controlled substance. The officers suspected Mr. Ibarra-Cisneros was connected to drug trafficking because of the tone and content of his conversation and arranged a meeting. When the undercover officers eventually approached Mr. Ibarra-Cisneros, he was standing near the side of a truck and had been under observation. Officers found a bindle on the ground next to where Mr. Ibarra-Cisneros was standing that contained cocaine and testified it was fresh looking without dust on it. After he was arrested, Mr. Ibarra-Cisneros stated, "If you saw me drop it, then I'll admit it's mine. . . . But if you didn't see me drop it then you can't charge me with it." RP (Gilberto Ibarra-Cisneros) at 210-11. Mr. Ibarra-Cisneros did not challenge the admissibility of his statement. This evidence would permit a reasonable jury to infer that Mr. Ibarra-Cisneros had dominion and control of the cocaine. Accordingly, sufficient evidence supports his possession conviction.
¶ 19 Mr. Ibarra-Raya's conviction is reversed. Mr. Ibarra-Cisneros' conviction is affirmed.
WE CONCUR: SWEENEY, and KORSMO, JJ.