[No. 26243-0-III.   Division Three.   May 28, 2009.]

THE CITY OF WALLA WALLA, *Respondent*, v. $401,333.44, *Defendant in Rem*, ADRIAN IBARRA-RAYA, *Appellant*.

*Janelle Carman* and *C. Dale Slack* (of *Carman Law Office*), for appellant.

*Timothy J. Donaldson, City Attorney*, for respondent.

¶1 SWEENEY, J. — This appeal follows a summary judgment in favor of the city of Walla Walla that forfeited money found in what police concluded was a drug house. We concluded in the related criminal prosecution that police illegally entered the house and that the superior court should, therefore, have suppressed evidence later seized from the house. *State v. Ibarra-Raya*, 145 Wn. App. 516, 523, 187 P.3d 301 (2008), *review granted*, 165 Wn.2d 1036 (2009). And we reversed the criminal convictions. *Id.* at 525. Here, each party claims that the evidence supports its right to the proceeds as a matter of law. We conclude that issues of fact remain, and we therefore reverse and remand for trial.

## FACTS

¶2 Walla Walla police officers received reports from a neighbor that led them to conclude that a house served as a "drop house" for money or drugs. They investigated, ultimately entered the house without the benefit of a search warrant, and saw substantial evidence of an ongoing drug operation:

> When officers arrived at the house, they saw lights on and heard party noise but reported nothing exceptional. A truck

without a license plate, but with a temporary permit, was in the driveway. The vehicle identification number (VIN) check came back "stolen out of California." . . .

Two officers then knocked on the front door; immediately the lights in the living room went off. Walla Walla Police Officer Tim Morford was on the side of the house and saw two men, one later identified as Mr. Ibarra-Raya, go into a room off the hallway and then come out of the room and open the back door. Officer Morford ordered the men to remain in the house. Officer Morford then followed the two men into the house and conducted a protective sweep, seeing marijuana and a bundle of cash. At this point, the officers learned that solely the truck's license plates had been stolen and that Mr. Ibarra-Raya was subleasing the house. Based on Officer Morford's observations, officers obtained a search warrant that led to the discovery of cocaine, over $400,000 sealed in plastic bags, and marijuana. Officers arrested Mr. Ibarra-Raya.

*Ibarra-Raya*, 145 Wn. App. at 520-21.

¶3 Police asked Mr. Ibarra-Raya whether the money was his. He denied that it was. The officers then obtained a warrant and searched a storage unit in nearby Milton-Freewater, Oregon. The storage unit contained methamphetamine, marijuana, and cocaine. The police also found a stolen truck and assorted items such as plastic bags and rubber gloves.

¶4 The State prosecuted Mr. Ibarra-Raya for possession with intent to deliver marijuana and possession of cocaine. The city of Walla Walla (City) sued to forfeit the $401,333.44 seized from the house. Mr. Ibarra-Raya moved to remove the forfeiture action to superior court. The court granted that motion. The City moved to dismiss for lack of standing based on Mr. Ibarra-Raya's denial that the money was his. Mr. Ibarra-Raya moved to stay the forfeiture proceedings pending resolution of the criminal case. The court stayed the forfeiture proceeding.

¶5 Mr. Ibarra-Raya was convicted. The City then moved to vacate the stay of forfeiture proceedings and asked the court to treat its earlier motion to dismiss as a summary

judgment motion. The court vacated the order staying the forfeiture proceedings and granted summary judgment to the City. The court concluded as a matter of law that Mr. Ibarra-Raya had no lawful interest in the money and that the money is subject to forfeiture because it is "furnished or intended to be furnished for a controlled substance in violation of the [U]niform [C]ontrolled [S]ubstances [A]ct[, chapter 69.50 RCW,] or used or intended for use to violate the [U]niform [C]ontrolled [S]ubstances [A]ct." Clerk's Papers (CP) at 273-74; *see also* Report of Proceedings at 30, 40-41.

¶6 Mr. Ibarra-Raya appealed his criminal convictions and argued, among other things, that the court should have suppressed evidence seized because the police's initial entry into the house was illegal. We agreed and reversed those convictions on the basis that the trial court erroneously denied Mr. Ibarra-Raya's motions to suppress. *Ibarra-Raya*, 145 Wn. App. at 523-25. We concluded that the police needed a warrant to enter the house. *Id.* at 523. The search and subsequent seizure of drugs, money, and other evidence were then unlawful. *Id.* at 523, 525.

¶7 Mr. Ibarra-Raya now appeals the court's summary judgment in favor of the City, forfeiting the $401,333.44 seized from the house. He claims the money is his.

## DISCUSSION

### COLLATERAL ESTOPPEL

¶8 Mr. Ibarra-Raya first contends that the City should be collaterally estopped from challenging the propriety of the search. He argues that this issue was resolved by our opinion in his appeal from his criminal convictions. The City responds that illegal seizure does not bar its action to forfeit. They are both correct. *United States v. Six Hundred Thirty-Nine Thousand Five Hundred & Fifty-Eight Dollars ($639,558) in U.S. Currency*, 293 U.S. App. D.C. 384, 387 n.5, 955 F.2d 712 (1992). The City also argues that there is substantial untainted evidence that the cash discovered in Mr. Ibarra-Raya's house is drug money or that it is not his.

¶9 Whether collateral estoppel bars a claim is a question of law that we review de novo. *LeMond v. Dep't of Licensing*, 143 Wn. App. 797, 803, 180 P.3d 829 (2008).

¶10 Collateral estoppel requires a showing of " '(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.' " *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987) (quoting *Malland v. Dep't of Ret. Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985)).

¶11 The cash here is subject to forfeiture under Washington's Uniform Controlled Substances Act. Forfeiture proceedings under RCW 69.50.505 "are quasi criminal in nature since their purpose is to penalize individuals who participate in the illegal transportation of controlled substances." *Deeter v. Smith*, 106 Wn.2d 376, 378, 721 P.2d 519 (1986); *accord Franklin v. Klundt*, 50 Wn. App. 10, 746 P.2d 1228 (1987), *overruled on other grounds by Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 798, 982 P.2d 601 (1999). The Fourth Amendment's exclusionary rule applies to forfeiture proceedings and so precludes the use of illegally obtained evidence in those proceedings. *Deeter*, 106 Wn.2d at 379.

¶12 At least two cases have applied collateral estoppel to forfeiture proceedings. In *Barlindal v. City of Bonney Lake*, the State pursued criminal proceedings against a defendant after seizing cash, drugs, and firearms from his home. 84 Wn. App. 135, 925 P.2d 1289 (1996). The court in the criminal trial concluded that the search of Mr. Barlindal's home and the seizure of his possessions were unlawful and suppressed the evidence resulting from the search. *Id.* at 137-38. The court in the forfeiture proceeding followed the determination from the criminal proceeding and excluded the evidence seized during the unlawful search. *Id.* at 138. The Court of Appeals affirmed. The court concluded that the exclusionary rule prohibits the use of

unlawfully obtained evidence in a civil forfeiture proceeding and agreed that collateral estoppel precluded reconsideration of whether the evidence was legally seized from Mr. Barlindal's home. *Id.* at 141-42.

¶13 In *City of Des Moines v. Personal Property Identified as $81,231 in United States Currency*, the trial court adopted the findings from the suppression hearing in the criminal trial. 87 Wn. App. 689, 943 P.2d 669 (1997). There, the court concluded that the warrantless search and seizure of money and personal property was legal. *Id.* And the Court of Appeals affirmed the trial court's decision that a conclusive determination of the search and seizure issue in the criminal trial collaterally estopped the claimant from challenging the seizure in the civil forfeiture proceeding. *Id.* at 700.

¶14 Here, the City agrees that the forfeiture cannot be based on the unlawful search and seizure. The City urges instead that the court may consider the seized money "for the limited purpose of establishing its existence, and the court's *in rem* jurisdiction over it." *Six Hundred Thirty-Nine Thousand Five Hundred & Fifty-Eight Dollars*, 293 U.S. App. D.C. at 387 n.5. We agree. The City also urges that there is sufficient untainted evidence to support a finding that the money was used for or gained from drug sales. The question, then, is whether genuine issues of material fact remain on both the ownership and source of the money seized. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004).

ISSUES OF MATERIAL FACT

¶15 Mr. Ibarra-Raya contends that the money is his and that the only factual disputes are over whether the money is the product of drug activity. The City responds that Mr. Ibarra-Raya has no standing to challenge forfeiture of the money because he did not show that the money was his and, indeed, denied that the money was his. And the City argues that it made the necessary showing that the money was the result of drug trafficking.

¶16 We review summary judgment orders de novo. *Id.* We view the evidence in a light most favorable to the nonmoving party. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 170, 736 P.2d 249 (1987). A court may grant summary judgment if the pleadings, affidavits, and depositions establish there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hisle*, 151 Wn.2d at 861. A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

¶17 "[A] court may refuse to return seized property no longer needed for evidence only if (1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute." *State v. Alaway*, 64 Wn. App. 796, 798, 828 P.2d 591 (1992). The City retained the money here pursuant to Washington's Uniform Controlled Substances Act. It permits forfeiture of moneys "furnished or intended to be furnished by any person in exchange for a controlled substance." RCW 69.50.505(1)(g).

¶18 The City argues that Mr. Ibarra-Raya had the initial burden of showing a lawful interest in the money. The City relies on *Irwin v. Mount* for its position. 47 Wn. App. 749, 753, 737 P.2d 277 (1987). It is mistaken. *Irwin* applies a prior version of RCW 69.50.505. In 2001, the legislature replaced the sentence of former RCW 69.50-.505(e) (1993) that read, "In cases involving personal property, the burden of producing evidence shall be upon the person claiming to be the lawful owner or the person claiming to have the lawful right to possession of the property." LAWS OF 2001, ch. 168, § 1. The legislature again revised the statute in 2003, changing section (e) into section (5). LAWS OF 2003, ch. 53, § 348.

¶19 RCW 69.50.505(5) now reads, "In all cases, the burden of proof is upon the law enforcement agency to establish, by a preponderance of the evidence, that the property is subject to forfeiture." The City had to show by a

preponderance of the evidence that the money seized was "furnished or intended to be furnished . . . in exchange for a controlled substance." RCW 69.50.505(1)(g), (5). The claimant, here Mr. Ibarra-Raya, is entitled to the money if the law enforcement agency fails to demonstrate that the property is subject to forfeiture. RCW 69.50.505(5).

¶20 The City relies on declarations of a narcotics investigator to support its claim. One of the Walla Walla narcotics investigator's two declarations explains the police department's pre-July 14, 2006, surveillance of the house under suspicion of drug activity. But that investigator ultimately concluded, "In doing some surveillance on the house, I didn't see much activity at all." CP at 170. In the remainder of his two declarations, the investigator reports other discoveries in the search of Mr. Ibarra-Raya's house and of the Oregon storage locker.

¶21 The officer inspected a pickup truck in the driveway of the house and inquired of the VIN (vehicle identification number) before making contact with the people at Mr. Ibarra-Raya's house on July 14. We did not invalidate that inspection or the inquiry. *Ibarra-Raya*, 145 Wn. App. at 523. Nor did we pass on the legality of the search of the Oregon storage locker. *Id.* at 521-24.

¶22 The City emphasizes that the storage locker contained factory taillight assemblies that fit the truck parked in Mr. Ibarra-Raya's driveway, which was outfitted with "after-market taillight assemblies." CP at 175, 685-86. However, no other untainted evidence in this record associates Mr. Ibarra-Raya with the storage locker or its contents. The storage locker was not leased to Mr. Ibarra-Raya. And all evidence the City cites as tying the storage locker, and the drugs it contained, to the money found in Mr. Ibarra-Raya's house was found during the illegal search of that house. For example, the investigator explained that a key found at Mr. Ibarra-Raya's house fit the lock on the storage unit. The storage unit also contained the same type of marijuana found at the house, plastic bags that were similar to those found at the house, and a rubber glove that

was similar to the glove found at the house. Removed from the context of the evidence seized from the Walla Walla house, the evidence seized from the Oregon storage unit does not make it more probably true that the money in Mr. Ibarra-Raya's house was "furnished or intended to be furnished . . . in exchange for a controlled substance." RCW 69.50.505(1)(g). Without the tainted evidence, the City is left showing a storage unit located 20 miles away from the seized money, leased to an individual unassociated with this action, and containing a lock, marijuana, rubber gloves, and plastic bags, period. Factual issues then remain as to whether Mr. Ibarra-Raya is the present lawful owner of the money or is entitled to possession.

¶23 We, therefore, reverse the summary judgment in favor of the City and remand for trial.

ATTORNEY FEES

¶24 Mr. Ibarra-Raya requests attorney fees pursuant to RCW 69.50.505(6). We conclude only that there are genuine issues of material fact. Fees and costs will then abide the ultimate resolution of this dispute. *In re Estate of Baird*, 131 Wn.2d 514, 522, 933 P.2d 1031 (1997).

BROWN and KORSMO, JJ., concur.