IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36131-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEFFREY GERARD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Jeffrey Gerard appeals his convictions for second degree burglary, possession of a controlled substance, and bail jumping. He argues the trial court erred when it allowed an officer to testify about his statements made prior to arrest, and the State presented insufficient evidence to convict him of second degree burglary. He also raises numerous arguments in a statement of additional grounds for review. We reject his arguments and affirm.

FACTS

During the early evening of October 27, 2017, Craig Overdorf was driving on his 70-acre property. His property included an unoccupied cabin, various outbuildings, and a dilapidated boat. He noticed a faint glow in the cabin. Eventually, he grabbed a rifle and

drove toward it to investigate. As he got closer, he noticed a vehicle parked behind the cabin. He dialed 911 and continued to approach. He then saw a person, later identified as Jeffrey Gerard, walking out of the cabin.

Overdorf raised his rifle and ordered Gerard to stop and stay where he was. Overdorf was still on the phone with 911. After they stood there for several minutes, Gerard dared Overdorf to shoot him, ran to his vehicle, started it, and drove down the driveway toward the main road.

As Gerard approached the end of the driveway, Washington State Patrol Trooper Jacob Pont pulled into the driveway. Gerard passed him slowly, turned onto the main road, but Trooper Pont stopped him. Trooper Pont told Gerard he was investigating a reported burglary Gerard was involved in. Gerard responded that he did not know the property was owned by anyone "and he was just looking at an abandoned boat that his buddy told him about." Report of Proceedings (RP) at 105. Trooper Pont noticed several items in Gerard's vehicle, including power tools, flashlights, screwdrivers, and metal cutting tools.

About 5 to 10 minutes after Gerard was stopped, Deputy Ed Gunnyon arrived. When Deputy Gunnyon approached Gerard, Gerard excitedly told him that a guy had pulled a gun on him. Deputy Gunnyon then asked Gerard what he was doing snooping

2

around on other people's property at night.  Gerard responded that he was "there looking

at the boat," and that his "buddy . . . told [him] that the boat was abandoned and [he] was

there looking at it."  RP at 113.  During this exchange, Gerard was still in his vehicle.

Although he was not under arrest, Deputy Gunnyon advised Gerard that he was

detained and not free to leave because Deputy Gunnyon had to speak to the property

owner.  Deputy Gunnyon spoke with Overdorf for about 30 minutes, returned to Gerard's

vehicle, arrested Gerard, and read him his *Miranda*[1] rights.

Gerard's vehicle was seized and later searched pursuant to a search warrant.

During the search, numerous power tools, flash lights, screwdrivers, pry bars, and

extension cords were found.  The search also found contraband, which later tested

positive as methamphetamine.

Initially, the State charged Gerard with second degree burglary.  Later, the State

amended the charges to include possession of a controlled substance and bail jumping.

The trial court conducted a CrR 3.5 hearing to determine the admissibility of

Gerard's statements to Deputy Gunnyon.  Deputy Gunnyon testified about the incident

and his conversation with Gerard.  The trial court ruled that Gerard's statement about

Overdorf pointing a gun at him was admissible as it was an unsolicited, voluntary

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

statement. The trial court also found that Gerard was not in custody when Deputy Gunnyon asked him why he was on the property. For this reason, Gerard's statement that he was there looking at the abandoned boat also was admissible.

At trial, Gerard testified he went inside the cabin and was looking at the property because he was interested in buying property. The jury found Gerard guilty of all three counts.

At sentencing, the trial court denied Gerard's request for a drug offender sentencing alternative (DOSA). Additionally, because of his high offender score of 16, the trial court sentenced Gerard to an exceptional sentence of 84 months' confinement.

Gerard timely appealed to this court.

## ANALYSIS

A.     ADMISSIBILITY OF GERARD'S STATEMENT TO DEPUTY GUNNYON

Gerard argues the trial court erred in finding that his initial statement to Deputy Gunnyon—that someone pulled a gun on him—was unsolicited. He also argues that the trial court erred in finding he was not in custody when he told Deputy Gunnyon he was on the property to look at the boat.

*Miranda* warnings are designed to protect a defendant's right not to make incriminating statements while in the potentially coercive environment of custodial police

4

interrogation. *State v. Harris*, 106 Wn.2d 784, 789, 725 P.2d 975 (1986); *see Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The *Miranda* rule applies when "the interview or examination is (1) custodial (2) interrogation (3) by a state agent." *State v. Post*, 118 Wn.2d 596, 605, 826 P.2d 172, 837 P.2d 599 (1992). Unless a defendant has been given the *Miranda* warnings, his statements, made in police custody, are presumed to be involuntary. *State v. Sargent*, 111 Wn.2d 641, 647-48, 762 P.2d 1127 (1988). Unless admission of the involuntary statement was harmless, the appropriate remedy is reversal and remand for entry of an order of suppression. *State v. D.R.*, 84 Wn. App. 832, 838, 930 P.2d 350 (1997).

1.      *Gerard's first statement that someone pulled a gun on him*

*Miranda* warnings are not required unless the person suspected of criminal activity is subjected to custodial interrogation. *State v. Posenjak*, 127 Wn. App. 41, 53, 111 P.3d 1206 (2005). Statements and admissions made that are not in response to an officer's questions are freely admissible. *Id.*

Gerard challenges the trial court's finding that his initial statement was unsolicited. CrR 3.5 findings of fact will be upheld if supported by substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). Substantial evidence exists

where there is sufficient evidence in the record to persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Substantial evidence supports the trial court's finding that Gerard's initial statement to Deputy Gunnyon—that a guy pulled a gun on me—was unsolicited. Deputy Gunnyon testified at the CrR 3.5 hearing that when he approached Gerard, Gerard "was very excited and he made the statement that that guy pulled a gun on me." RP at 6. Deputy Gunnyon testified that he did not ask any questions of Gerard prior to Gerard's initial statement. This sufficiently supports the trial court's finding that Mr. Gerard's initial statement to Deputy Gunnyon regarding a gun was an unsolicited, voluntary statement. The trial court did not err in admitting that statement.

2. *Gerard's second statement that he was on the property looking at an abandoned boat*

*Miranda* warnings are not required unless the person suspected of criminal activity is in custody. *Posenjak*, 127 Wn. App. at 53. "'[C]ustodial' refers to whether the defendant's freedom of movement was restricted at the time of questioning." *Post*, 118 Wn.2d at 605-06. Washington has adopted an objective test to evaluate "whether a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest." *State v. Heritage*, 152 Wn.2d

6

210, 218, 95 P.3d 345 (2004) (citing *Berkemer v. McCarty*, 468 U.S. 420, 441-42, 104 S.

Ct. 3138, 82 L. Ed. 2d 317 (1984)).

Gerard argues that because he was not free to leave for over 30 minutes while

Deputy Gunnyon spoke with Overdorf, he was in custody for purposes of *Miranda*.

Generally, a routine *Terry*[2] stop or other similar traffic stop does not rise to the

level of "custody" for purposes of *Miranda* warnings.  *Berkemer*, 468 U.S. at 439-40;

*Heritage*, 152 Wn.2d at 218 (*Terry* stops are not custodial under *Miranda*).  "An officer

making a *Terry* stop may ask a moderate number of questions to determine the identity of

the suspect and to confirm or dispel the officer's suspicions without rendering the suspect

'in custody' for purposes of *Miranda*."  *Heritage*, 152 Wn.2d at 219 (citing *Berkemer*,

468 U.S. at 439-40).  An "on-the-street *Terry* stop" or comparable traffic stop does not

require *Miranda* warnings because traffic stops and routine *Terry* stops are brief, occur in

public, and are "'substantially less "police dominated"'" than the type of police

interrogations contemplated by *Miranda*.  *Id*. at 218 (quoting *Berkemer*, 468 U.S. at 439).

Here, Gerard had been detained only for 5 or 10 minutes when Deputy Gunnyon

asked why he was on Overdorf's property at night.  When Gunnyon asked Gerard this

question, Gerard was sitting in his vehicle and had not been handcuffed.  Gerard's

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

freedom of movement had not been curtailed to a degree associated with a formal arrest.

Gerard gave an exculpatory answer—he was on the property looking at a boat. The

question was a permissible question under *Terry* to dispel or confirm the officer's belief

of whether Gerard had committed a crime.

We conclude that Gerard was not in custody when he made his second statement

that he was on the property to look at a boat. The trial court did not err in admitting

Gerard's second statement.

        B.      SUFFICIENCY OF EVIDENCE FOR SECOND DEGREE BURGLARY CONVICTION

Gerard argues that insufficient evidence supports his burglary conviction because

the State presented no evidence that he entered the cabin with the intent to commit a

crime.

Due process requires the State to prove all elements of the crime beyond a

reasonable doubt. *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). In a

sufficiency challenge, the inquiry is "whether, after viewing the evidence in the light most

favorable to the State, any rational trier of fact could have found guilt beyond a

reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All

reasonable inferences are drawn in the State's favor, and the evidence is interpreted most

strongly against the defendant. *Id*. This court's role is not to reweigh the evidence and

8

substitute its judgment for that of the trier of fact. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

A person commits second degree burglary "if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." RCW 9A.52.030(1). Burglary does not require an intent to commit a specific crime; rather, it requires an intent to commit any crime against a person or property. *State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985). Intent to commit a crime may be inferred when a person enters or remains unlawfully. *State v. Cantu*, 156 Wn.2d 819, 826, 132 P.3d 725 (2006); *State v. Bishop*, 90 Wn.2d 185, 188-89, 580 P.2d 259 (1978). Specifically, RCW 9A.52.040 defines the permissible inference of criminal intent for burglary as

> any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent.

Little is required to support a finding of criminal intent once unlawful entry is established. *See, e.g.*, *State v. Couch*, 44 Wn. App. 26, 32, 720 P.2d 1387 (1986) (finding sufficient evidence to infer intent to commit a crime where defendant entered surreptitiously and took flight upon discovery). Also, for a trier of fact to draw inferences

9

from proven facts, the inference must be "rationally related" to the proven facts. *State v.*

*Jeffries*, 105 Wn.2d 398, 442, 717 P.2d 722 (1986). The State need only establish that

criminal intent was "more likely than not." *State v. Deal*, 128 Wn.2d 693, 700, 911 P.2d

996 (1996).

There was sufficient evidence to support that Gerard unlawfully entered the

unoccupied cabin because he even testified that he entered it. Also, there was sufficient

evidence for the jury to rationally infer that he entered the cabin with the intent to commit

a crime. The jury was specifically instructed on this permissible inference:

> **Instruction No. 14:** A person who enters or remains unlawfully in a
> building may be inferred to have acted with the intent to commit a crime
> against a person or property therein.
> This inference is not binding upon you and it is for you to determine
> what weight, if any such inference is to be given.

RP at 257.

The State presented ample evidence from which a jury could draw the necessary

inference. First, Gerard attempted to flee when Overdorf discovered him in the cabin.

*See State v. Thompson*, 69 Wn. App. 436, 444, 848 P.2d 1317 (1993) (attempting to flee

is circumstantial evidence of guilt). Second, particular tools—flashlights, pry bars, power

tools, and screwdrivers—characterized as burglary tools by law enforcement, were found

in the back of Gerard's vehicle. Third, Gerard provided an implausible explanation for

10

being on the property.  He told the officers that he was looking at an abandoned boat, but

this did not explain why he did so in the dark of night or why he was inside the cabin.

*See Couch*, 44 Wn. App. at 32 (sufficient evidence found to support inference of criminal

intent when defendant entered unlawfully, fled immediately upon being found, and

offered a lame or improbable story for being in the area).  We conclude the State

presented sufficient evidence to sustain Gerard's conviction for second degree burglary.

        C.        STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

        RAP 10.10 permits a defendant to file a pro se statement of additional grounds for

review (SAG) if the defendant believes his appellate counsel has not adequately

addressed certain matters.

        Mr. Gerard raises several arguments in his SAG involving allegations of

(1) prosecutorial misconduct, (2) an improper ruling by the trial court on an objection,

(3) an improper denial of his motion to sever, (4) an improper or illegal sentence,

(5) ineffective assistance of trial and appellate counsel, (6) an improper denial of his

request to post an appeal bond, and (7) insufficient evidence to support his possession of

a controlled substance conviction.  We address each of these in turn.

11

SAG Ground 1:

*1A.  Prosecutorial Misconduct:* Brady[3] *Violation*

Mr. Gerard argues that the prosecutor improperly withheld his Yakima arrest and that this constitutes a *Brady* violation.

To establish a *Brady* violation, a defendant must demonstrate the existence of each of three necessary elements: (1) the State must have suppressed the evidence, either willfully or inadvertently, (2) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching, and (3) prejudice must have ensued such that there is a reasonable probability that the result of the proceeding would have differed had the State disclosed the evidence to trial counsel.  *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011).  A *Brady* claim fails if the defendant does not demonstrate all of these elements.  *Id.*

In this case Mr. Gerard cannot support his claim.  The arrest record Mr. Gerard refers to is outside the appellate record and this court is precluded from considering facts not in the record.  *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

---

[3] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

### *1B. Prosecutorial Misconduct: Closing Argument*

Mr. Gerard contends the prosecutor improperly argued facts not in evidence and points to several of the prosecutor's statements in closing that he feels are improper.

To demonstrate prosecutorial misconduct, Mr. Gerard has the burden of showing that (1) the State acted improperly, and (2) the State's improper act prejudiced him. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Misconduct is prejudicial if there is a substantial likelihood that it affected the verdict. *Id*. at 760-61. However, if a defendant fails to object to the State's improper act at trial, he or she waives any error unless the improper act was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). In assessing this, courts "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

We review allegations of prosecutorial misconduct during closing argument in light of the entire argument, the issues in the case, the evidence discussed during closing argument, and the court's instructions. *State v. Sakellis*, 164 Wn. App. 170, 185, 269 P.3d 1029 (2011). During closing argument, the State has wide latitude in drawing and

expressing reasonable inferences from the evidence, including inferences about

credibility. *State v. Thompson*, 169 Wn. App. 436, 496, 290 P.3d 996 (2012).

Mr. Gerard claims the prosecutor accused him of stealing, but the record does not

support this. The prosecutor stated that "it's reasonable . . . that you don't go onto

people's property—go into their buildings and steal their stuff. . . . [T]hat's reasonable

one-on-one." RP at 265. Nowhere in this statement does the prosecutor allege that Mr.

Gerard stole anything.

Mr. Gerard also argues the prosecutor improperly stated that the methamphetamine

found in his vehicle was not Debbie Minkler's. He contends this was improper because

Ms. Minkler specifically testified that it could have been her methamphetamine.

However, the evidence also showed that Mr. Gerard had dominion and control over the

vehicle so there was the potential for the drugs to be his, which the prosecutor was

permitted to raise and discuss in closing. *See Thompson*, 169 Wn. App. at 496.

Mr. Gerard further argues that the prosecutor mischaracterized the facts when he

stated during closing, "it was all [Mr. Gerard's] stuff in the car. . . . [H]e's by himself in

the car. You know—maybe it—but I give kids rides to school and Sunday school and

such. You know—one of the kids dropped it on the way to Sunday school or class. . . .

[T]hat's not reasonable or credible." RP at 270. Again, although Mr. Gerard is correct

that there was no mention of him giving rides to children to Sunday school or classes,

testimony was provided that Mr. Gerard gave people rides, including children, with his

vehicle to various places, and the prosecutor is provided latitude in providing inferences

about credibility and discussing the reasonableness of the defendant's theory of the case

based on the evidence. *Id.*

Mr. Gerard also challenges, for the first time on appeal, the prosecutor's

characterization that he had no money or had some "vague promise" of coming into

money. RP at 271. While Mr. Gerard's brother's death was briefly mentioned at trial and

that he may come into some money through an inheritance when his brother's estate is

probated, there was no mention of exactly how much nor was there any other proof or

evidence provided to support Mr. Gerard's suggestion that he was planning on buying

property. As such, the prosecutor was allowed to question the credibility and

reasonableness of Mr. Gerard's defense theory based on the evidence. As a result, the

prosecutor's statements here were not improper nor were they "so flagrant and ill-

intentioned" that they could not have been cured by a jury instruction. *State v. Stenson*,

132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

Finally, Mr. Gerard makes several arguments, for the first time on appeal, that the

prosecutor mischaracterized the evidence (e.g., stating the events leading to the charges

occurred in the middle of the night when it was actually the early evening hours) and accuses the prosecutor of lying about this. However, like the arguments discussed above, these comments and statements are not so improper that they could not have been neutralized by an admonition to the jury.

These arguments raise factual matters that are not in the appellate record; therefore, this court is precluded from addressing this argument and the proper avenue for relief would be for Mr. Gerard to file a personal restraint petition (PRP). *McFarland*, 127 Wn.2d at 335.

Mr. Gerard has failed to demonstrate that the prosecutor committed misconduct during closing argument.

### 1C. *Prosecutorial Misconduct: Cross-Examination*

Mr. Gerard also challenges the prosecutor's method of questioning inserted words and testimony into his and other witnesses' mouths. These challenges are all based on leading questions given by the prosecution during cross-examination. Leading questions are generally permissible when cross-examining a witness called by an opponent. 3 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 773, at 165 (James H. Chadbourn rev. 1970).

Therefore, this argument fails to demonstrate prosecutorial misconduct.

16

SAG Ground 2:  Excluding Relevant Evidence

Mr. Gerard contends the trial court erred in sustaining the State's relevancy objection to his counsel's question regarding Dennis Chapman because this information was relevant.  He argues that Deputy Gunnyon should have been able to answer this question as Dennis Chapman and his co-defendants recently pleaded guilty to one of the prior burglaries in the area—specifically at Mr. Overdorf's property—and that this would show why people in the area were suspicious of strangers on their property.  He also argues that not allowing this evidence likely allowed the jury to speculate that he was a part of an ongoing burglary ring in the area even though he did not take anything from Mr. Overdorf or his property.

A trial court's decision to exclude evidence is reviewed for abuse of discretion. *State v. Starbuck*, 189 Wn. App. 740, 750, 355 P.3d 1167 (2015).  Criminal defendants have a constitutional right to present relevant evidence.  *State v. Gregory*, 158 Wn.2d 759, 790, 147 P.3d 1201 (2006), *overruled on other grounds by State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014).  However, a trial court may exclude evidence if the probative value of the evidence is outweighed by such factors as unfair prejudice, confusion of the issues, or potential to mislead the jury.  *Starbuck*, 189 Wn. App. at 751.

Evidence regarding Dennis Chapman and the burglary ring in the area was never presented at trial and was irrelevant to this case, as it likely would have misled the jury. Additionally, it was irrelevant to Mr. Gerard's theory of the case, which he testified to. Mr. Gerard testified that he did not take anything from the property and no stolen property was ever found in Mr. Gerard's vehicle.

As to Mr. Gerard's theory that he unwittingly stumbled on the property, which had a preexisting suspicious environment due to recent burglaries, this is also irrelevant, as any property owner would be suspicious if they found a stranger wandering around their property and exploring cabins or buildings on their property, regardless of previous burglaries.

As such, the ongoing burglary ring and the criminal defendants involved in such offenses were irrelevant to Mr. Gerard's case, and the trial court did not abuse its discretion in sustaining the State's objection to defense counsel's question.

SAG Ground 3:  Denied Motion to Sever Bail Jumping Charge

Next, Mr. Gerard challenges the trial court's decision to deny his motion to sever the bail jumping charge from his other charges.  Prior to trial, Mr. Gerard motioned for the court to sever his bail jumping charge, arguing that the jury would be unfairly biased against him if they heard that charge against him.  The trial court denied the motion,

18

finding that the charges were connected because the bail jumping charge resulted from Mr. Gerard's failure to appear on the underlying burglary and possession of a controlled substance charges, and simply resolving the matter in one trial rather than multiple trials was beneficial and promoted judicial economy. Mr. Gerard did not renew his motion for severance prior to the close of trial.

CrR 4.4(b) authorizes a trial court to grant a severance of offenses in response to a motion from either the prosecuting attorney or defendant if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." A defendant, generally, must make a motion for severance before the beginning of trial. CrR 4.4(a)(1). If the pretrial motion is denied, the defendant may renew the motion before the close of trial. CrR 4.4(a)(2). If a defendant fails to renew the motion for severance before the close of trial, then severance is waived. *State v. Wilcoxon*, 185 Wn. App. 534, 540 n.4, 341 P.3d 1019 (2015), *aff'd*, 185 Wn.2d 324, 373 P.3d 224 (2016); CrR 4.4(a)(2). Because Mr. Gerard failed to renew his motion to sever prior to the close of trial, he waived the issue of severance and cannot raise it on appeal.

SAG Ground 4:

*4A.  Improper Sentence: Miscalculated Offender Score*

Mr. Gerard argues that his offender score was miscalculated.  This argument is without any support or citation to the record or any authority.  Thus, this court declines to review this argument.  RAP 10.10(c).

*4B.  Improper Sentence: Denial of Drug Offender Sentencing Alternative*

Mr. Gerard contends the trial court's reasoning for denying his DOSA request was absurd because the amount of methamphetamine found was not a large or substantial amount, as described by the court, and he did not pinpoint anyone in particular to blame for the presence of the methamphetamine in his vehicle.

RCW 9.94A.660 allows courts to impose an alternative sentence for drug offenders when the court finds the offender and the community would benefit from the use of the alternative.  An offender is eligible for a DOSA if, "the offense involved only a small quantity of the particular controlled substance as determined by the judge upon consideration of such factors as the weight, purity, packaging, sale price, and street value of the controlled substance."  RCW 9.94A.660(1)(d).

Generally, a trial court's decision to not grant a DOSA is not reviewable, but the procedure by which the court came to its decision may be challenged and reviewed by this

court. *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005). We review such challenges for abuse of discretion. *Id.*

Mr. Gerard's argument mischaracterizes the trial court's reasoning for denying his DOSA request. The trial court specifically found that it was not logical for Mr. Gerard to now be asking for a DOSA sentence and treatment when he specifically denied that the methamphetamine belonged to him and noted how other people had ridden with him in his vehicle before. Mr. Gerard had his friend, Debbie Minkler, testify in his defense at trial. He had her testify that she had previously ridden in his vehicle and that the methamphetamine could have been hers. Contrary to Mr. Gerard's argument, he maintained his innocence that the methamphetamine found in his vehicle was not his, and he never acknowledged that he used or had a problem with drugs until sentencing.

In addition, a drug analyst testified that 2.7 grams of methamphetamine, which was termed an "eight ball," were found and analyzed. RP at 152. In denying the DOSA, the trial court said, "[t]his was not a small amount of drugs. This was an eight ball—it was a quite a bit bigger drug amounts that we've had in many of the recent drug cases that we've had" and characterized it as, "quite a substantial amount of methamphetamine that were in that vehicle there." RP at 303. As such, it does not appear that the trial court abused its discretion in denying Mr. Gerard's DOSA request.

21

### *4C.  Improper Sentence: Court Bias*

Mr. Gerard further argues that his sentence violated equal protection principles because the trial court was biased against him and would give similarly situated defendants DOSA sentences.  He contends that because the judge usually gives other defendants with drug convictions protreatment DOSA sentences and he did not receive one, this shows that the judge was biased and had animosity toward him.  However, there is nothing in the record to support this argument and it raises factual matters outside the record.  Thus, this court is precluded from reviewing this argument. *McFarland*, 127 Wn.2d at 335.

### *4D.  Improper Sentence: Exceptional Sentence Reasoning*

Mr. Gerard contends that the reasoning for his exceptional sentence was improper.  Mr. Gerard asserts that the free crimes aggravator, due to his high offender score, allowed for an exceptional sentence but was not a valid reason to give one.

Trial courts are given authority to impose an exceptional sentence when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."  RCW 9.94A.535(2)(c).  In this case, Mr. Gerard's offender score was 16 for the burglary conviction and 15 for his other two convictions.  The trial court acknowledged that Mr. Gerard's high offender

score would result in "current offenses go[ing] unpunished." *See State v. Alvarado*, 164 Wn.2d 556, 567, 192 P.3d 345 (2008) ("[W]here current offenses go unpunished based on criminal history and current offenses, this is an aggravating circumstance per se.").

The trial court did not abuse its discretion in imposing an exceptional sentence.

SAG Ground 5:

*5A.  Ineffective Assistance of Counsel: Trial Counsel*

Mr. Gerard argues that his trial counsel provided ineffective assistance.  This court reviews ineffective assistance of counsel claims de novo as they present mixed questions of law and fact.  *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To prove ineffective assistance, Mr. Gerard must demonstrate that his counsel's performance was deficient and this deficient performance prejudiced him.  *Id*. at 687.

To meet the deficiency prong, Mr. Gerard must show that his counsel's performance fell "below an objective standard of reasonableness."  *Id*. at 688.  This threshold is high due to the great deference afforded to decisions of defense counsel. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011); *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (defendant must overcome "a strong presumption that counsel's performance was reasonable").  "When counsel's conduct can be characterized as

legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. However, a defendant can rebut this presumption by showing that "there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

To satisfy the prejudice prong, Mr. Gerard must establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. This reasonable probability is a prospect "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Mr. Gerard argues that his trial counsel provided ineffective assistance because she failed to object to the State's closing argument, specifically the phrases or statements he previously raises and challenges in his prosecutorial misconduct argument; she allegedly forced him to take the stand in defense of his bail jumping charge; she failed to obtain the arrest report that led to him being in jail in Yakima County, which resulted in his bail jumping charge in Klickitat County; she failed to argue at sentencing that Mr. Gerard was penalized for exercising his right to trial; she never requested a bail reduction hearing; she failed to adequately prepare him and his testimony prior to trial; and she failed to object to Deputy Gunnyon's neighbor being on the jury.

In regard to Mr. Gerard's argument that his trial counsel was ineffective for not objecting to the State's improper closing argument statements, which are raised in his prosecutorial misconduct argument, Mr. Gerard cannot demonstrate prejudice. As discussed above, none of the prosecutor's statements that Mr. Gerard challenges as constituting prosecutorial misconduct were improper nor were they "so flagrant and ill-intentioned" that they could not have been cured by a jury instruction. *Stenson*, 132 Wn.2d at 719. As such, Mr. Gerard's trial counsel did not provide deficient performance by failing to object to the prosecutor's statements nor was Mr. Gerard prejudiced by her failure to object to the challenged statements.

We now move onto Mr. Gerard's other arguments regarding his trial counsel. These arguments all involve matters outside the appellate record, which this court cannot address. Thus, these matters should be addressed through a PRP. *McFarland*, 127 Wn.2d at 335.

### 5B. *Ineffective Assistance of Counsel: Appellate Counsel*

Mr. Gerard also argues his appellate counsel provided ineffective assistance because his appellate counsel ignored all of the potential issues Mr. Gerard raised in a letter he sent to his counsel and his counsel failed to communicate with him. This argument involves factual matters outside this appellate record that this court cannot

address.  Thus, these matters should be addressed through a PRP.  *McFarland*, 127

Wn.2d at 335.

SAG Ground 6:  Denial of Appeal Bond

Mr. Gerard argues the trial court improperly denied his right to post an appeal

bond.  This argument involves factual matters outside of the record on appeal, precluding

our review.  *McFarland*, 127 Wn.2d at 335.

SAG Ground 7: Sufficiency of the Evidence for Possession Charge

Mr. Gerard contends that insufficient evidence supports his possession of a

controlled substance conviction because the State failed to prove that the

methamphetamine belonged to him.  Specifically, he argues that because Ms. Minkler

testified that the methamphetamine could have been hers, this created a reasonable doubt,

which convinced the judge to allow her to testify at trial.

The trial court allowed Ms. Minkler to testify because the court found her

testimony to be relevant.  Relevance is not a high hurdle as it is defined as evidence that

has "*any* tendency" to make the existence of a consequential fact more or less likely than

it would be if the evidence did not exist.  ER 401 (emphasis added); *Salas v. Hi-Tech*

*Erectors*, 168 Wn.2d 664, 670, 230 P.3d 583 (2010).  Admitted evidence and credibility

of trial testimony is assessed, ultimately, by the jury. *State v. Bucknell*, 144 Wn. App. 524, 528, 183 P.3d 1078 (2008).

As stated previously, we determine sufficiency of the evidence in the light most favorable to the State and interpret it most strongly against the defendant to decide if any rational trier of fact could have found guilt beyond a reasonable doubt. *Salinas*, 119 Wn.2d at 201.

Mr. Gerard was charged with possession of a controlled substance under RCW 69.50.4013. The State may establish that possession of a controlled substance is either actual or constructive. *State v. Ibarra-Raya*, 145 Wn. App. 516, 524, 187 P.3d 301 (2008), *rev'd on other grounds by State v. Ibara-Cisneros*, 172 Wn.2d 880, 263 P.3d 591 (2011). Constructive possession may be found where the defendant has dominion and control over the premises where the drugs are discovered. *Ibarra-Raya*, 145 Wn. App. at 524-25. A vehicle is a premises for this inquiry. *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). When a defendant claims that they were in unwitting possession, they bear the burden of presenting evidence to support that theory. *State v. Sundberg*, 185 Wn.2d 147, 153, 370 P.3d 1 (2016).

In this case, methamphetamine was found in a car driven by Mr. Gerard. At the time, Mr. Gerard was the only passenger in the car. He offered testimony by Ms. Minkler that the trial court found to be relevant to support Mr. Gerard's theory that the methamphetamine was not his. However, this does not mean that this testimony proved this assertion beyond a reasonable doubt. The jury, in weighing this evidence against all the other evidence, found that it did not create reasonable doubt. During her testimony, Ms. Minkler stated that the drugs found in Mr. Gerard's car "could have been" hers. RP at 155. She testified she had lost methamphetamine earlier in the day, but did not know where. RP at 154. She also testified that it was possible the drugs belonged to Mr. Gerard. RP at 155. This testimony, when combined with the other evidence and viewed in a light most strongly against the defendant, does not preclude any rational trier of fact from finding that the drugs were in Mr. Gerard's possession beyond a reasonable doubt. Therefore, Mr. Gerard cannot demonstrate that insufficient evidence supports his possession of a controlled substance conviction.

No. 36131-4-III
*State v. Gerard*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Korsmo, J.                                                      Siddoway. J.

29